468 F.2d 699
 72-2 USTC P 12,893
 ESTATE of Hector R. SKIFTER, Deceased, Janet Skifter Kelley
and the Chase Manhattan Bank (National
Association), Executors, Appellees,
v.
COMMISSIONER OF INTERNAL REVENUE, Appellant.
 No. 72, Docket 72-1445.
 United States Court of Appeals,
Second Circuit.
 Argued Sept. 15, 1972.
Decided Oct. 19, 1972.
 
 Archibald H. Cashion, New York City (George J. Noumair and Whitman & Ransom, New York City, on the brief), for appellees.
 Elmer J. Kelsey, Department of Justice, Washington, D.C. (Scott P. Crampton, Asst. Atty. Gen., Meyer Rothwacks and William S. Estabrook, III, Attys., Department of Justice, Washington, D.C., on the brief), for appellant.
 Before FRIENDLY, Chief Judge, and LUMBARD and FEINBERG, Circuit Judges.
 LUMBARD, Circuit Judge:
 
 
 1
 The Commissioner of Internal Revenue appeals from a decision of the Tax Court holding that proceeds of nine insurance policies on decedent's life were not includible in decedent's estate. The Tax Court, 56 T.C. 1190, held incorrect the Commissioner's inclusion of these proceeds in decedent's gross estate and his assessment of a deficiency thereon.
 
 
 2
 In 1961 Hector Skifter, the decedent, assigned all his interest in nine insurance policies on his life to his wife Naomi, effectively making her the owner of those policies. Skifter retained no interest in the policies and retained no power over them. Several months later, Naomi died and left a will directing that her residuary estate, which included the nine insurance policies, be placed in trust. She directed that the income was to be paid to their daughter, Janet, for life and, upon Janet's death, there were provisions for the distribution of corpus and income to other persons.
 
 
 3
 Naomi appointed Skifter as trustee and authorized him, in his absolute discretion, at any time and from time to time, to pay over the whole or any part of the principal of the trust to the current income beneficiary whether or not this would result in the termination of the trust. It was explicitly provided that, in making these payments, the trustee could disregard any rules of trust law that may require impartiality between income beneficiaries and remaindermen. In addition, Skifter, as trustee, was given broad powers of management and control over the trust, including the powers to sell and mortgage the property and invest and reinvest the proceeds.
 
 
 4
 In 1964 Skifter died and a successor trustee was named. Contending that, under the terms of the trust established under Naomi's will, Skifter possessed at his death "incidents of ownership" so as to require that the proceeds of the insurance be included in his estate under Sec. 2042(2) of the Internal Revenue Code, the Commissioner assessed a deficiency against the estate. From the Tax Court's holding in favor of the estate, the Commissioner appeals.
 
 
 5
 Section 2042(2) of the Internal Revenue Code provides, in pertinent part, as follows:
 
 
 6
 The value of the gross estate shall include the value of all property to the extent of the amount receivable by all . . . beneficiaries as insurance under policies on the life of the decedent with respect to which the decedent possessed at his death any of the incidents of ownership, exercisable either alone or in conjunction with any other person.
 
 
 7
 The essential issue before this Court is whether the broad fiduciary powers that were granted to Skifter under Naomi's will constitute "incidents of ownership" within the meaning of Sec. 2042(2). We hold that they do not, and thus affirm the decision of the Tax Court.
 
 
 8
 In enacting the predecessor of Sec. 2042(2), the Senate and House Committee Reports of the Seventy-seventh Congress acknowledged that, while the new provision introduced the term "incidents of ownership," it failed to suggest a definition of it. The Reports then went on to list the sort of powers and interest that the Congress was concerned with:
 
 
 9
 Examples of such incidents are the right of the insured or his estate to the economic benefits of the insurance, the power to change the beneficiary, the power to surrender or cancel the policy, the power to assign it, the power to revoke an assignment, the power to pledge the policy for a loan, or the power to obtain from the insurer a loan against the surrender value of the policy.
 
 
 10
 See 1942-2 Cum.Bull., pp. 491, 677. The Treasury relied on this legislative history in promulgating its regulations on Sec. 2042(2). Reg. Sec. 20.2042-1(c)(2) states:
 
 
 11
 For purposes of this paragraph, the term "incidents of ownership" is not limited in its meaning to ownership of the policy in the technical legal sense. Generally speaking, the term has reference to the right of the insured or his estate to the economic benefits of the policy. Thus, it includes the power to change the beneficiary to surrender or cancel the policy, to assign the policy, to revoke an assignment, to pledge the policy for a loan, or to obtain from the insurer a loan against the surrender value of the policy, etc. . . .
 
 
 12
 It seems significant to us that the reference point in the regulation for "incidents of ownership" is "the right . . . to the economic benefits of the policy," since there was no way in which Skifter could have exercised his powers to derive for himself any economic benefits from these insurance policies.
 
 
 13
 The predecessor of Sec. 2042 provided that, if the decedent continued to pay the premiums on the policy, even if he had divested himself of all interest therein, the proceeds therefrom would be included in his estate at death. In reenacting this predecessor provision as Sec. 2042 of the Internal Revenue Code of 1954, Congress eliminated this premium test. In explaining this change, the Senate Finance Committee stated:
 
 
 14
 No other property is subject to estate tax where the decedent initially purchased it and then long before his death gave away all rights to the property and to discriminate against life insurance in this regard is not justified.
 
 
 15
 S.Rep.No. 1622, 83rd Cong.2d Sess., p. 124, U.S.Code Cong. & Admin.News 1954, p. 4757. The inference from this statement is very strong that it was the intent of Congress that Sec. 2042 should operate to give insurance policies estate tax treatment that roughly parallels the treatment that is given to other types of property by Sec. 2036 (transfers with retained life estate), Sec. 2037 (transfers taking effect at death), Sec. 2038 (revocable transfers), and Sec. 2041 (powers of appointment).
 
 
 16
 This inference is supported by the fact that Sec. 2042(2) explicitly provides that "incident of ownership" includes a reversionary interest, and then proceeds to treat such reversionary interests in a manner closely paralleling the treatment that Sec. 2037 gives to reversionary interests in other property. This provision was added when Congress enacted Sec. 2042 into the 1954 Code. The Senate Finance Committee explained this addition as follows:
 
 
 17
 The House and your committee's bill retains the present rule including life-insurance proceeds in the decedent's estate if the policy is owned by him or payable to his executor, but the premium test has been removed. To place life-insurance policies in an analogous position to other property, however, it is necessary to make the 5-percent reversionary interest rule, applicable to other property, also applicable to life insurance.
 
 
 18
 S.Rep. No. 1622, 83d Cong., 2d Sess., p. 124, U.S.Code Cong. & Admin. News 1954, p. 4757.
 
 
 19
 Although this legislative history is hardly conclusive on the matter, we feel that there is sufficient support to justify our conclusion that Congress intended Sec. 2042 to parallel the statutory scheme governing the interests and powers that will cause other types of property to be included in a decedent's estate. This conclusion is reinforced by the types of interests and powers that Congress indicated were exemplary of what it meant to be included within the scope of "incidents of ownership." The interests there listed are interests that would cause other types of property to be included in a decedent's estate under Sec. 2036 or Sec. 2037; and the powers that Congress discussed are also powers that would result in the property being included in the decedent's estate under Sec. 2038 or Sec. 2041. Therefore, in ruling on the Commissioner's contention that the fiduciary power here involved is an "incident of ownership," a question that has not been considered under Sec. 2042, we feel that we should look to the experience under the statutory scheme governing the application of the estate tax to other types of property. Indeed, the Commissioner, in making his contentions before us, relies on numerous analogies to decisions under these other statutory provisions.
 
 
 20
 The core of the controversy here centers on the decedent's power, as trustee, to prefer the current income beneficiary over the remainderman and all later income beneficiaries through payment of the entire trust corpus. He did not have the power to alter or revoke the trust for his own benefit and he could not name new, additional, or alternative beneficiaries. In this regard, Reg. Sec. 20.2042-1(c)(4) provides:
 
 
 21
 A decedent is considered to have an "incident of ownership" in an insurance policy on his life held in trust if, under the terms of the policy, the decedent (either alone or in conjunction with another person or persons) has the power (as trustee or otherwise) to change the beneficial ownership in the policy or its proceeds, or the time or manner of enjoyment thereof, even though the decedent has no beneficial interest in the trust.
 
 
 22
 The Commissioner contends that this regulation requires that the proceeds of the policies here be included in decedent's estate.
 
 
 23
 The Tax Court declined to interpret that regulation so as to make it applicable here, but concluded that, since the power could not be exercised to benefit the decedent or his estate, it would not cause the proceeds to be included in his estate. If the power had been exercisable for the benefit of decedent, or for the benefit of whomever the decedent selected, it would have been necessary to include the proceeds in the estate; for there would be a powerful argument that this was an incident of ownership since he would have had the equivalent of a power of appointment, which under Sec. 2041 would cause other types of property to be included in the estate of the holder of such a power. This distinction causes us to concur in the Tax Court's conclusion that the Commissioner's reliance on our decision in Commissioner v. Karagheusian's Estate, 233 F.2d 197 (2d Cir. 1956), is misplaced.
 
 
 24
 The power that the decedent possessed was over the entire trust corpus, which included property other than the insurance policies. But there is no serious doubt that this power did not result in this other property being in decedent's estate for tax purposes. This type of power would fall under both Sec. 2036 and Sec. 2038. The former provision is clearly not triggered in this case because it only applies to a power retained by the grantor over the income from property when he transferred it to another. Thus, for purposes of Sec. 2036, it would not matter that the decedent effectively had the power to deprive later income beneficiaries of the income from the corpus in favor of an earlier income beneficiary. However, the latter provision, Sec. 2038, would apply because decedent had the power "to alter, amend . . ., or terminate" the trust. The Commissioner has pointed to many cases holding that such a power would result in the property interest over which the power could be exercised being included in the estate of the holder of the power. See e. g. Lober v. United States, 346 U.S. 335, 74 S.Ct. 98, 98 L.Ed. 15 (1953); United States v. O'Malley, 383 U.S. 627, 86 S. Ct. 1123, 16 L.Ed.2d 145 (1966) (decided under Sec. 2036); Commissioner of Internal Revenue v. Newbold's Estate, 158 F.2d 694 (2d Cir. 1946). Therefore, he argues, this power must be an incident of ownership for Sec. 2042 purposes also.
 
 
 25
 But the Commissioner's reliance on Sec. 2038 cases exposes the fatal flaw in his position. The cases he cites dealt with powers that were retained by the transferor or settlor of a trust. That is not what we have here; the power the decedent had was given to him long after he had divested himself of all interest in the policies-it was not reserved by him at the time of the transfer. This difference between powers retained by a decedent and powers that devolved upon him at a time subsequent to the assignment is not merely formal, but has considerable substance. A taxpayer planning the disposition of his estate can select the powers that he reserves and those that he transfers in order to implement an overall scheme of testamentary disposition; however, a trustee, unless there is agreement by the settlor and/or beneficiaries, can only act within the powers he is granted. When the decedent is the transferee of such a power and holds it in a fiduciary capacity, with no beneficial interest therein, it is difficult to construe this arrangement as a substitute for a testamentary disposition by the decedent. Cf. Porter v. Commissioner of Internal Revenue, 288 U.S. 436, 444, 53 S.Ct. 451, 77 L.Ed. 880 (1933); Commissioner of Internal Revenue v. Chase National Bank, 82 F.2d 157, 158 (2d Cir. 1936).
 
 
 26
 Accordingly, we conclude that, although such a power might well constitute an incident of ownership if retained by the assignor of the policies, it is not an incident of ownership within the intended scope of Sec. 2042 when it has been conveyed to the decedent long after he had divested himself of all interest in the policies and when he cannot exercise the power for his own benefit. We justify this interpretation of "incidents of ownership" on the apparent intent of Congress that Sec. 2042 was not to operate in such a manner as to discriminate against life insurance, with regard to estate tax treatment, as compared with other types of property. We also note that our conclusion comports with the views expressed by the Sixth Circuit in Estate of Fruehauf v. Commissioner of Internal Revenue, 427 F.2d 80, 84-85 (6th Cir. 1970). Therefore, we must reject the contention of the Commissioner that the language of Sec. 2042 requires that it be given a broader scope of operation than the statutes covering other types of property.
 
 
 27
 Until now, the discussion has assumed that Sec. 2038 only applies when the power possessed by the decedent was reserved by him at the time he divested himself of all interest in the property (other than life insurance) subject to the power. This necessitates a brief discussion of the language of Sec. 2038, which provides in pertinent part:
 
 
 28
 The value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer . . ., by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power (in whatever capacity exercisable) . . . . (without regard to when or from what source the decedent acquired such power), to alter, amend, revoke, or terminate . . . (emphasis added).
 
 
 29
 The emphasized language would appear to indicate that Sec. 2038 would apply even when the power was acquired under circumstances such as are present here. However, there is no indication that the Commissioner has ever made such an argument and we have been able to find no case applying Sec. 2038 in this manner.
 
 
 30
 The noted language was added to the predecessor of Sec. 2038 in 1936 in response to the decision in White v. Poor, 296 U.S. 98, 56 S.Ct. 66, 80 L.Ed. 80 (1935). In that case, the decedent had created an inter vivos trust and conferred on the trustee the power jointly to terminate the trust. Subsequently, the decedent was appointed a successor trustee. Therefore, at death decedent possessed this power to terminate and the Commissioner attempted to apply the predecessor to Sec. 2038; but the Supreme Court held this was impermissible because decedent had not retained the power at the time of transfer but had received it later. It was for the purpose of changing this result that Congress added the emphasized language. However, this language appears never to have been applied to a power other than one that the decedent created at the time of transfer in someone else and that later devolved upon him before his death. In essence, the language has been applied strictly to change the result in White v. Poor.
 
 
 31
 We need not here consider the reasons for applying Sec. 2038 to powers such as that involved in White v. Poor. Nor need we speculate whether or not such a power would trigger Sec. 2042, for that question is not before us. What is significant for our purposes is that Sec. 2038 has not been applied when the power possessed by decedent was created and conferred on him by someone else long after he had divested himself of all interest in the property subject to the power. Therefore, because of our view that Congress did not intend Sec. 2042 to produce divergent estate tax treatment between life insurance and other types of property, we conclude that the fiduciary power that Skifter possessed at his death did not constitute an "incident of ownership" under Sec. 2042; hence, that provision does not require that the life insurance proceeds at issue be included in Skifter's estate.
 
 
 32
 The Tax Court was thus correct in holding that Reg. Sec. 20.2042-1(c)(4) must be read to apply to "reservations of powers by the transferor as trustee" and not to powers such as that in issue. Accordingly, the decision of the Tax Court is affirmed.