**Catherine Myers ROSE, Individually and as Trustee of Eleanor Catherine Rose, Gregory Warren Rose and Victor Ray Rose, Testamentary Trusts, Plaintiff-Appellant,**

v.

**UNITED STATES of America, Defendant-Appellee.**

No. 73–3952.

United States Court of Appeals, Fifth Circuit.

April 11, 1975.

V. Ray Rose, Donald A. Meyer, Jacqueline McPherson, New Orleans, La., for plaintiff-appellant.

Scott P. Crampton, Asst. Atty. Gen., Tax Div., Dept. of Justice, Meyer Rothwacks, Chief, Appellate Section, Fleming T. deGraffenried, Carolyn R. Just, Jonathan S. Cohen, Attys., Tax Div., Dept. of Justice, Washington, D. C., Gerald J. Gallinghouse, U. S. Atty., Robert N. Habans, Jr., Asst. U. S. Atty., New Orleans, La., for defendant-appellee.

Before THORNBERRY, GOLDBERG and GODBOLD, Circuit Judges.

GOLDBERG, Circuit Judge:

Catherine Myers Rose, plaintiff below, brought this tax refund suit in the district court to secure a refund of $5,265.07 in estate taxes which she paid under protest as representative of her decedent husband's estate. The district court entered summary judgment for the Government, and Rose appeals.

The dispute centers about the necessity to include in the decedent's gross estate the value of three life insurance policies held by the decedent as sole trustee of three trusts established by his brother for the benefit of the decedent's children. The Commissioner maintains that at the time of the decedent's death he possessed incidents of ownership in the policies, rendering the policy proceeds includable in his gross estate under 26 U.S.C. § 2042(2). Appellant Rose contends that the decedent trustee possessed no such incidents of ownership, so that taxation is inappropriate. Finding the issues resolved in favor of the Government by our opinion in Estate of Lumpkin v. Commissioner, 5 Cir. 1973, 474 F.2d 1092, we affirm.

I

In October, 1954, Lester H. Rose, the brother of decedent Warren A. Rose, created three separate irrevocable trusts and funded each with an initial $100.00. Each of the decedent's three children was made the sole beneficiary of one of the trusts, and the decedent was appointed trustee of each trust. Each trust was to terminate when its beneficiary reached age 25, but the trustee was empowered to release trust income in his discretion after the beneficiary reached age 18. The trust instruments delegated broad administrative powers to the trustee to manage and invest the trust property.

In May, 1955, the decedent applied, as trustee of each of the three trusts, for three separate life insurance policies on his own life. The decedent, as trustee of each of the respective trusts, was made owner and beneficiary of each policy. So far as the record discloses, all premi-

ums on each of the three policies were paid out of the income or corpus of the respective trusts. Under the terms of each of the insurance contracts, the decedent-trustee retained the power to convert the policies on a specified date from whole life insurance either to limited payment life insurance or to endowment insurance. The decedent was also empowered to withdraw dividend accumulations or surrender any dividend additions for their cash value (provided that such accumulations or additions were not required as security for a loan), or to obtain loans on the policy from the insurer, up to the amount of the cash surrender value plus dividend additions and dividend accumulations. If interest due the insurer on such loans were allowed to accumulate in excess of the remaining available loan value, the policy would terminate. No provision in the trust instruments prohibited the decedent from exercising these powers provided in the insurance policies. On the contrary, as the district court found, the decedent-trustee possessed the right and power to alter the time and manner of enjoyment of the policy proceeds through his authority to withdraw dividends, obtain loans, or cancel or convert the policies.

The decedent died in October, 1966.

## II

Section 2042(2) of the Estate Tax Code provides in pertinent part that,

The value of the gross estate shall include the value of all property—

.  .  .  .  .

(2) To the extent of the amount receivable . . . as insurance under policies on the life of the decedent with respect to which the decedent possessed at his death any of the incidents of ownership, exercisable either alone or in conjunction with any other person. . . .

The sole question here is whether the decedent possessed "any of the incidents of ownership" in the insurance policies on his life which he held as trustee. We conclude that he did.

In Estate of Lumpkin v. Commissioner, 5 Cir. 1973, 474 F.2d 1092, the employer of the decedent covered a number of its employees, the decedent included, under a group term life insurance policy. According to its terms, decedent *Lumpkin's* dependents were entitled to death benefits consisting of a modest lump sum, followed by a series of monthly payments (equal to half the decedent's monthly wages) which were to continue over a period determined by *Lumpkin's* tenure with his employer. The payments were to go to the decedent's wife; or if she were not living, then to his dependent children; or if no children survived, then to his parents. Decedent *Lumpkin* had no power to change the beneficiaries under the policy. The policy did, however, provide a settlement option which would to some extent defer a surviving wife's receipts. Under this option, however, any amounts which the decedent's wife would have received during her life under the standard settlement provision but which were not paid to her during her life under the elected option, would be paid to her estate upon her death. With the agreement of the employer and insurer, the decedent was permitted to design further alternative settlement patterns, so long as they did not alter the share of the proceeds due any policy-designated beneficiary. Thus, decedent *Lumpkin* could not change or prefer beneficiaries under the insurance plan, but he could affect the timing of benefits which any beneficiary or his estate would be entitled to. "In short the right to elect optional modes of settlement gave *Lumpkin* a degree of control over the time when the proceeds of the policy would be enjoyed and nothing more." 474 F.2d at 1095.

The question addressed and resolved by this court in *Lumpkin* was whether the decedent's right to alter the time of enjoyment of the insurance proceeds constituted an "incident of ownership" within the meaning of § 2042(2). In resolving this question, we recognized—as has

the Second Circuit [1]—that "by enacting § 2042 Congress intended to give life insurance policies estate tax treatment roughly equivalent to that accorded other types of property under related sections of the Code," e. g., §§ 2036 (transfers with retained life estate); 2037 (transfers taking effect at death); 2038 (revocable transfers); 2041 (powers of appointment). 474 F.2d at 1095. Judging from the meager legislative history [2] and reading these enumerated provisions in pari materia, we concluded that "by using the 'incidents of ownership' term Congress was attempting to tax the value of life insurance proceeds over which the insured at death still possessed a substantial degree of control." 474 F.2d at 1095.[3] Drawing then from cases decided under the predecessors of kindred §§ 2036 and 2038,[4] we concluded that "because the control it affords is substantial, . . . a right to alter the time of enjoyment such as that conferred upon Lumpkin by the optional modes of settlement provision in this case is an 'incident of ownership' under § 2042." 474 F.2d at 1097.

Appellant Rose does not seriously argue here, nor could we be persuaded, that the kind of control exercisable by her husband before his death was significantly different from the type of the control open to the decedent in Lumpkin,

except that the decedent Rose held his powers in a fiduciary capacity. Appellant Rose does argue, however, that a trustee stands in a significantly different position of control as compared with an individual.

We think that the decedent's trustee status does not take this case out of Lumpkin. In Lober v. United States, 1953, 346 U.S. 335, 74 S.Ct. 98, 98 L.Ed. 15, the decedent had created three irrevocable trusts, each vesting an estate in one of his three children, and by designating himself as trustee, he retained the fiduciary power to bestow the trust principal and income at any time before each beneficiary attained the age at which release was mandatory, 25 years for trust principal, 21 for income. The Supreme Court included the value of the trust property in the decedent's estate under the forerunner to present § 2038,[5] ruling that,

"A donor who keeps so strong a hold over the actual and immediate enjoyment of what he puts beyond his own power to retake has not divested himself of that degree of control which [the statute] requires in order to avoid the tax."

346 U.S. at 337, 74 S.Ct. at 100, 98 L.Ed. at 18, quoting Commissioner v. Holmes, 1946, 326 U.S. 480, 487, 66 S.Ct. 257, 260, 90 L.Ed. 228, 233. More recently, in

---

1. See Skifter v. Commissioner, 2 Cir. 1972, 468 F.2d 699, 702.

2. See H.R.Rep.No.2333, 77th Cong., 2d Sess. 163 (1942); S.Rep.No.1631, 77th Cong., 2d Sess. 235 (1942):

Examples of . . . incidents of [ownership] are the right of the insured or his estate to the economic benefits of the insurance, the power to change the beneficiary, the power to surrender or cancel the policy, the power to assign it, the power to revoke an assignment, the power to pledge the policy for a loan, or the power to obtain from the insurer a loan against the surrender value of the policy.

H.R.Rep.No.2333, 77th Cong., 2d Sess. 163 (1942); S.Rep.No.1631, 77th Cong., 2d Sess. 235 (1942).

3. Accord, United States v. Rhode Island Hosp. Trust Co., 1 Cir. 1966, 355 F.2d 7, 10.

4. United States v. O'Malley, 1966, 383 U.S. 627, 86 S.Ct. 1123, 16 L.Ed.2d 145; Lober v. United States, 1953, 346 U.S. 335, 74 S.Ct. 98, 98 L.Ed.2d 15.

5. Internal Revenue Code of 1939, § 811(d)(2):

The value of the gross estate of the decedent shall be determined by including the value at the time of his death all property . . .

To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, where enjoyment thereof was subject at the date of his death to any change through the exercise of a power, either by decedent alone or in conjunction with any person, to alter, amend, or revoke, or where the decedent relinquished any such power in contemplation of his death, except in case of a bona fide sale for an adequate and full consideration in money or money's worth.

United States v. O'Malley, 1966, 383 U.S. 627, 86 S.Ct. 1123, 16 L.Ed.2d 145, a case substantially parallel to *Lober,* the Supreme Court included the value of trust income in a settlor's gross estate under the predecessor of § 2036,[6] where the settlor retained a strictly fiduciary control over the disposition trust income. In our opinion in *Lumpkin,* we relied on *Lober* and *O'Malley* to demonstrate the nature of power over the time and manner of enjoyment of property which the Congress intended to reach under § 2042(2). These cases signify clearly to us that fiduciary restraints over the exercise of the decedent's control do not automatically deprive it of the substantiality required for inclusion under § 2042(2).[7]

Appellant Rose urges, however, that a trustee stands in a different position of control as compared with an individual because a trustee under the applicable state law could not derive any economic benefit from his control. In this way Appellant Rose seeks to apply an "economic benefit" gloss on *Lumpkin's* "substantial control" approach. Even were we now inclined to regard the prospect of a decedent's economic benefit as a necessary component of "any of the incidents of ownership" under § 2042(2), however, *Lumpkin* would prohibit our so holding. For in *Lumpkin* we specifically held that the nature of the decedent's powers over the insurance rendered the insurance proceeds includable under § 2042(2), despite the fact that "*Lumpkin* could not benefit himself or his estate." 474 F.2d at 1095.[8]

Moreover, we remain unpersuaded that *Lumpkin's* "substantial control" approach is inappropriate here. It is undisputed that "the term 'incidents of ownership' is not limited in its meaning to ownership of the policy in the technical legal sense." Reg. § 20.2042–1(c)(2). While the Regulations state that "*[g]enerally speaking,* the term has reference to the right of the insured or his estate to the economic benefits of the policy," [9] they also provide in part that:

> A decedent is considered to have an "incident of ownership" in an insurance policy on his life held in trust if, under the terms of the policy, the decedent (either alone or in conjunction with another person or persons) has the power (as trustee or otherwise) to change the beneficial ownership in the policy or its proceeds, or the time or manner of enjoyment thereof, even though the decedent has no beneficial interest in the trust.

Reg. § 20.2042–1(c)(4). This Regulation establishes the precise point which Appellant Rose would contradict here.

The Second Circuit has concluded that Reg. § 20.2042–1(c)(4) "must be read to apply [only] to '*reservations* of powers by the transferor as trustee.' " Estate of Skifter v. Commissioner, 1972,

---

**6.** Internal Revenue Code of 1939, § 811(c)(1)(B)(ii):

The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property . . .

.   .   .   .   .

To the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise—

.   .   .   .   .

under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death . . . the right, either

alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom  .   .   ..

**7.** *But see* Estate of Fruehauf v. Commissioner, 6 Cir. 1970, 427 F.2d 80.

**8.** *See also* Estate of James H. Lumpkin, Jr., 1971, 56 T.C. 815, 823.

**9.** *Id.* (emphasis added). *Compare* the legislative history recited in note 2 *supra, with* Reg. § 20.2042–1(c)(2). The legislative history demonstrates that Congress did not intend to limit includability under § 2042(2) to cases in which the decedent could secure economic benefits from his powers over the insurance. *Accord,* United States v. Rhode Island Hosp. Trust Co., 1 Cir. 1966, 355 F.2d 7, 10–11.

468 F.2d 699, 705 (emphasis added). In so holding, the *Skifter* court relied primarily upon the observation that *Lober, O'Malley,* and their judicial descendants applying the "substantial control" approach all "dealt with powers retained by the transferor or settlor of a trust." 468 F.2d at 703. But we indicated our disagreement with *Skifter's* reading of § 2042 in *Lumpkin,* 474 F.2d at 1097, and we adhere to that position now. Under § 2036 Congress specifically levied the estate tax upon interests *retained* by a decedent in connection with an incomplete transfer;[10] and § 2038 is similar in

effect.[11] Under § 2042, however, Congress applied the tax to insurance over which a decedent *possessed* any incidents of ownership. The difference in statutory language is significant. *Lober*[12] and *O'Malley* quite naturally involved retained interests because they arose under statutes designed to reach only interests so held. But nothing in those cases suggests that the substantiality of the control possessed by the decedents there depended upon whether the decedents' interests were retained in connection with an incomplete transfer rather than derived in some other fashion. We agree

---

**10.** Section 2036 provides:

The value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death—

(1) the possession or enjoyment of, or the right to the income from, the property, or

(2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom.

**11.** *See Lumpkin,* 474 F.2d at 1095–97; *Skifter,* 468 F.2d at 703–05.

Section 2038 provides in pertinent part:

(a) . . . The value of the gross estate shall include the value of all property—

(1) [*Transfers After June 22, 1936*] To the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power (in whatever capacity exercisable) by the decedent alone or by the decedent in conjunction with any other person *(without regard to when or from what source the decedent acquired such power),* to alter, amend, revoke, or terminate, or where any such power is relinquished in contemplation of decedent's death.

(2) [*Transfers on or Before June 22, 1936*] To the extent of any interest therein of which the decedent has at any

time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power, *either by the* decedent alone or in conjunction with any person, to alter, amend, or revoke, or where the decedent relinquished any such power in contemplation of his death. Except in the case of transfers made after June 22, 1936, no interest of the decedent of which he has made a transfer shall be included in the gross estate under paragraph (1) unless it is includible under this paragraph.

Clearly the statute is not limited in terms to inclusion of retained interests. Some reference to the history of this section, however, illustrates the sensitivity of Congress and the courts to the precise language differences in question here, and demonstrates the parallelism in application between §§ 2036 and 2038. *See generally Skifter,* 468 F.2d at 704–05. Significantly enough, *Lober* was decided under Internal Revenue Code of 1939, § 811(d)(2), reproduced in note 5 *supra,* the analogue of present § 2038(a)(2). Eighteen years earlier, in White v. Poor, 1935, 296 U.S. 98, 56 S.Ct. 66, 80 L.Ed. 80, the Supreme Court held the forerunner of § 811(d)(2) not to include a power not reserved in the original declaration of trust. The language emphasized in the recitation of § 2038(a)(1) above—which, of course, was not brought into *Lober* —was introduced in response to White v. Poor, and "appears never to have been applied to a power other than one that the decedent created at the time of transfer in someone else and that the latter devolved upon him before his death. In essence, the language has been applied strictly to change the result in White v. Poor." *Skifter,* 468 F.2d at 704.

**12.** *See* note 11 *supra.*

with the Second Circuit that § 2042 "roughly parallels" its cousin sections of the Estate Tax Code in regard to the substantiality of the decedent's control which is prerequisite to includability in decedent's gross estate. But we cannot ignore Congress' conspicuous variety in statutory idiom, so as to make the tax treatment of insurance identical with the taxation of other interests: § 2042 was not drawn in terms to catch only *retained* incidents of ownership, and we find no basis to infer such a design.[13] Here, where the decedent-trustee's rights to alter the time and manner of enjoyment of the insurance proceeds were procured by the decedent-trustee himself,[14] we have no difficulty in concluding under *Lumpkin* and Reg. § 20.-2042–1(c)(4) that the value of the insurance proceeds was properly included in his gross estate under § 2042(2).

Congress through § 2042 has given discrete statutory treatment to policies of insurance. Sections 2036, 2037, 2038, 2041, and 2042 may be consanguineous, but each has an individual personality with genetic variations. These provisions developed from a common design to tax testamentary harvests, and they reach common sorts of decedent controls. As the caselaw cross-pollinations—or pari materia interpretations—establish: Rose the insured and possessor of incidents of ownership, is Rose, even though garlanded by leaves of trusteeship. Each section is not identical, however. Life insurance is a specie of its own, it occupies a special place in the tax field,

and we cannot simply graft terms from one provision onto another. Whether the insurance sheaves found in the decedent's hands are selected stalks from once-larger bundles, or whether they represent all that the taxpayer ever cultivated from the seed he had, the Congressional direction is to tax whatever is possessed at the end of the season.

The judgment of the district court is affirmed.

**13.** The *Skifter* panel justified its determination to accord little weight to the differences in statutory language ultimately on the "apparent intent of Congress that § 2042 was not to operate in such a manner as to discriminate against life insurance, with regard to estate tax treatment, as compared with other types of property." 468 F.2d at 704. This perception of Congressional objective was derived largely from an examination of legislative history specifically directed to: (a) elimination of estate taxation of insurance on which the decedent had paid the premiums but had "long since" given up all present incidents of ownership; and (b) the treatment of insurance under the 5% reversionary interest rule. We find this evidence of Congress'

aim less convincing than its plain choice of statutory terminology.

**14.** Aside from the inconsistencies in approach between *Skifter* and *Lumpkin* (which of course controls here) the fact that decedent Rose procured the subject insurance policies himself distinguishes the matter at bar from the situation in *Skifter.* In *Skifter* the insurance policies held by the decedent in trust had belonged to his wife, and the decedent's incidents of ownership only devolved upon him by operation of his wife's testamentary trust. At the time of Skifter's wife's death, Skifter had neither a beneficial interest, nor incidents of ownership, nor any fiduciary relationship to the insurance proceeds.