Edwin E. GESNER, Marjorie G. Johnson, Herman H. Copelon, Co-Executors of the Estate of Carleton P. Gesner

v.

The UNITED STATES.

No. 534–77.

United States Court of Claims.

June 13, 1979.

**1350**

Alan L. Schiff, New Haven, Conn. for plaintiff, Warren K. Rosen and Copelon, Schiff & Zangari, New Haven, Conn., of counsel.

Iris J. Brown, with whom was Asst. Atty. Gen. M. Carr Ferguson, Washington, D.C., for defendant; Theodore D. Peyser, Donald H. Olson and Marc Levey, Washington, D.C., of counsel.

Before FRIEDMAN, Chief Judge, COWEN, Senior Judge, and KASHIWA, Judge.

## ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFFS' CROSS–MOTION FOR SUMMARY JUDGMENT

COWEN, Senior Judge.

This suit for refund of $13,626.61 in estate tax and assessed interest is before the court on the parties' cross-motions for summary judgment. Plaintiffs, co-executors of the estate of decedent, Carleton P. Gesner, dispute the inclusion by the Internal Revenue Service (IRS) of certain insurance policies in the decedent's gross estate under section 2042(2) of the Internal Revenue Code of 1954.[1] The precise question presented for decision here is whether the decedent possessed incidents of ownership in five insurance policies on his life which were held by a trust of which he was both a trustee and the income beneficiary. We hold that the decedent did possess incidents of ownership in the policies, and accordingly, grant the defendant's motion for summary judgment.

Some time prior to the end of 1963, the decedent transferred ownership of five insurance policies on his life to his wife, Elizabeth K. Gesner. Mrs. Gesner died on July 12, 1966, and pursuant to her will, the five insurance policies passed with the residue of her estate to a trust. The will named decedent the income beneficiary of the trust and provided that upon decedent's death the trust assets were to be divided equally between Marjorie G. Johnson and Edwin E. Gesner, the children of decedent and Mrs. Gesner. Mrs. Gesner's will designated decedent and the two children as co-trustees of the trust. Paragraph NINTH, section (*o*) of Mrs. Gesner's will provided as follows:

> Inasmuch as the trust created in this will is primarily for the benefit of the life tenant, for the time being, full power is granted to the trustees, not only to relieve them from seeking judicial instructions, but also to the extent that they may deem it to be prudent to encourage determinations freely to be made in favor of the income beneficiary. The rights of all subsequent beneficiaries are subordinate, and no trustee shall be answerable

---

1. 26 U.S.C. § 2042 of the Internal Revenue Code of 1954, provides in pertinent part:

    "The value of the gross estate shall include the value of all property—

    \* \* \* \* \* \*

    "(2) *Receivable by other beneficiaries.—*

    "To the extent of the amount receivable by all other beneficiaries as insurance under policies on the life of the decedent with respect to which the decedent possessed at his death any of the incidents of ownership, exercisable either alone or in conjunction with any other person. \* \* \*"

to any subsequent beneficiary for anything done or omitted in favor of the income beneficiary, for the time being, but the income beneficiary may not compel such favorable treatment. Specifically, but without reducing the scope of this declaration of intent, this shall be deemed to include investment policy, determination of principal and income questions, PROVIDED, HOWEVER, that such determinations of allocations between principal and income shall in general conform to prevailing rules for the determination of principal and income questions.

Decedent died on September 17, 1972, and the assets of the trust were duly divided between the two children. Plaintiffs filed an estate tax return for decedent's estate, paying $45,719.70 in tax. Upon audit, the Internal Revenue Service included in the gross estate under section 2042(2) an additional $44,026.93 representing the proceeds of the five insurance policies on decedent's life held by the trust. Plaintiffs paid the additional assessment of $11,359.68 plus interest of $2,266.93 and filed a claim for refund, which the IRS denied. This suit followed.

The term "incidents of ownership" is not defined in the Code, but Treas.Reg. § 20.-2042–1(c)(2) states that:

\* \* \* the term "incidents of ownership" is not limited in its meaning to ownership of the policy in the technical legal sense. Generally speaking, the term has reference to the right of the insured or his estate to the economic benefits of the policy. Thus, it includes the power to change the beneficiary, to surrender or cancel the policy, to assign the policy, to revoke an assignment, to pledge the policy for a loan, or to obtain from the insurer a loan against the surrender value of the policy, etc. \* \* \*[2]

The insurance policies which the Internal Revenue Service included in the decedent's gross estate contained provisions authorizing the owners, here the trustees, (1) to receive dividends in cash in lieu of applying the dividends toward the payment of premiums or toward the purchase of additional coverage; (2) to surrender the policies for their cash value; (3) to obtain cash advances against the loan value; (4) to assign the policies as security for loans; and (5) with respect to four of the policies, to elect among optional modes of settlement of the policy proceeds.

Plaintiffs do not deny that if these powers had been possessed by decedent in a personal capacity he would have possessed incidents of ownership in the insurance poli-

---

**2.** The concept of subjecting life insurance to the estate tax as a result of the decedent's possession of "incidents of ownership" in the policies seems to have originated with the Supreme Court's decision in *Chase National Bank v. United States*, 278 U.S. 327, 49 S.Ct. 126, 73 L.Ed. 405 (1929). *See* II Mertens, LAW OF FEDERAL GIFT AND ESTATE TAXATION § 17.11. The term first appeared in the Treasury Regulations in 1929 (*see* Treas.Reg. § 70 (1929) Art. 27) and in the Code in 1954 (*see* the Revenue Act of 1942, ch. 619, § 404, 56 Stat. 944). The Committee reports for the Revenue Act of 1942 explain the term as follows:

"There is no specific enumeration of incidents of ownership, the possession of which at death forms the basis for inclusion of insurance proceeds in the gross estate, as it is impossible to include an exhaustive list. Examples of such incidents are the right of the insured or his estate to the economic benefits of the insurance, the power to change the beneficiary, the power to surrender, or cancel the policy, the power to assign it, the power

to revoke an assignment, the power to pledge the policy for a loan, or the power to obtain from the insurer a loan against the surrender value of the policy. Incidents of ownership are not confined to those possessed by the decedent in a technical legal sense. For example, a power to change the beneficiary reserved to a corporation of which the decedent is sole stockholder is an incident of ownership in the decedent." [S.Rep. No. 1631, 77th Cong. 2d Sess. 235 (1942); H.R. Rep. No. 2333, 77th Cong. 2d Sess. 163 (1942).] As can be readily seen, the language of Treas.Reg. § 20.2042–1(c)(2) follows the Committee language quite closely. The Treasury Regulation, however, seemingly places somewhat greater emphasis on the availability of the economic benefits of the policies to the insured than do the Committee reports. *See Estate of Connelly v. United States*, 551 F.2d 545 (3d Cir. 1977).

cies. *See, e.g., Prichard v. United States,* 397 F.2d 60 (5th Cir. 1968); *Commissioner of Internal Revenue v. Treganowan,* 183 F.2d 288 (2d Cir. 1950); *Liebmann v. Hassett,* 148 F.2d 247 (1st Cir. 1945). Plaintiff's contention is, rather, that decedent's powers over the insurance policies in the trust could be exercised only in a fiduciary capacity and in conjunction with two other trustees and were thus limited to such an extent that decedent did not have that degree of control necessary to constitute incidents of ownership. Plaintiffs make two principal arguments in support of their contention: (1) decedent and his two co-trustees were adverse parties, and (2) under Connecticut law, decedent was obligated to act impartially among the beneficiaries of the trust and not favor himself as the income beneficiary.

Plaintiffs' first argument is grounded in the grantor trust provisions of the Code, which set forth rules for determining when the grantor of a trust shall be considered the owner of the trust and accordingly taxed upon its income.[3] The grantor trust rules examine the grantor's powers over the trust from the perspective of whether the powers are exercisable in conjunction with a party having an interest in the trust adverse to that of the grantor. Plaintiffs contend that the adverse party concept should be applied here because the theories of including life insurance in the gross estate under section 2042(2) and of taxing trust income to the grantor under sections 671 through 679 are similar in that in both situations, the tax is placed upon the party who controls the asset. Under the grantor trust standards, plaintiffs argue, the decedent would not be deemed to be in control of the trust and therefore he should not be deemed to be in possession of incidents of ownership in the life insurance policies in the trust.

While plaintiffs' proposition has some theoretical appeal, we find it untenable under the current statute. The legislative history of section 2042 does not disclose any intent on the part of Congress to introduce the adverse party concept into the estate taxation of life insurance.[4] Moreover, section 2042(2) speaks in terms of "incidents of ownership, exercisable either alone or in conjunction with *any* other person." [emphasis added]. This language would seem to preclude the type of gloss plaintiffs propose here. Those courts which have considered the applicability of section 2042(2) to a decedent's powers over life insurance policies where the powers were shared with one or more parties having an adverse interest, have not even commented on the fact that the interests were adverse. *See Nance v. United States,* 430 F.2d 662 (9th Cir. 1970); and *Commissioner of Internal Revenue v. Karagheusian,* 233 F.2d 197 (2d Cir. 1956). This silence suggests that those courts have not considered the existence of competing interests among the parties sharing the powers to be relevant in determining whether the decedent possessed incidents of ownership under section 2042(2). *See* Eliasberg, *IRC Section 2042— The Estate Taxation of Life Insurance: What is an Incident of Ownership?,* 51 Taxes 91, 100 (1973). In sum, if the concept of adversity of interest is to be introduced into considerations of shared powers under section 2042(2), it is for the Congress to do, not this court. We therefore conclude that any possible adversity of interest between decedent and his two co-trustees is not relevant in determining whether decedent possessed incidents of ownership in the life insurance policies at issue.

Plaintiffs' second argument in support of their contention that decedent did

---

**3.** The grantor trust provisions are contained in sections 671–679 of the Code. Section 672(a) defines an "adverse party" as "any person having a substantial beneficial interest in the trust which would be adversely affected by the exercise or nonexercise of the power which he possesses respecting the trust  *  *  *."

**4.** *See* the House and Senate reports cited *supra,* note 2. *See also,* S.Rep. No. 1622, 83d Cong., 2d Sess. 124, 473 (1954); H.R.Rep. No. 1337, 83d Cong., 2d Sess. 91, A316 (1954), U.S.Code Cong. & Admin.News 1954, pp. 4025, 4629.

not have sufficient control over the policies to constitute incidents of ownership is that under Connecticut law, the decedent had a fiduciary duty to deal impartially between the income beneficiary and the remaindermen of the trust, which duty, they assert, would have prevented the decedent from exercising his powers over the policies for his own benefit. We find, however, that under Connecticut law the decedent could have properly exercised his powers as a trustee for his own benefit without violating his fiduciary duties. While plaintiffs' statement that the decedent had a duty to deal impartially between the successive beneficiaries of the trust is accurate as far as it goes, see II SCOTT ON TRUSTS, §§ 170, 183 (3d ed. 1967); III SCOTT ON TRUSTS, § 232 (3d ed. 1967), it fails to take account of the well established principle that a trustee's duties may be altered by the terms of the trust to authorize him to take actions which would otherwise be a breach of his fiduciary duties, see II SCOTT ON TRUSTS, § 170.9 (3d ed. 1967); III SCOTT ON TRUSTS, § 232 (3d ed. 1967).

Under paragraph NINTH (*o*) of Mrs. Gesner's will, quoted *supra*, the trustees were authorized to take actions favoring the income beneficiary over the remaindermen. While decedent may not have been able to exercise any powers over the trust assets which would have benefitted him as the income beneficiary in the absence of paragraph NINTH (*o*), its presence in the will enabled him to do just that. *Cf. Gimbel v. Bernard F. and Alva B. Gimbel Foundation, Inc.*, 166 Conn. 21, 347 A.2d 81, 86–88 (1974). *See also Estate of Fruehauf v. Commissioner of Internal Revenue*, 427 F.2d 80, 86 (6th Cir. 1970).

Decedent could thus have properly exercised his powers as a trustee to surrender the insurance policies for cash and thereby increase the corpus of the trust. This action, it is reasonable to assume, would have increased the income of the trust, resulting in a direct economic benefit to the decedent as the income beneficiary. The decedent's power to obtain such a benefit from the insurance policies is clearly an incident of

ownership within the meaning of Treas. Reg. § 20.2042–1(c)(2). That conclusion is buttressed by the decision of the United States Court of Appeals for the Sixth Circuit in *Estate of Fruehauf, supra.*

In *Estate of Fruehauf*, the decedent (Fruehauf) was named in his wife's will as co-executor of her estate and co-trustee of a trust created by the will. Fruehauf was also the income beneficiary of the trust which numbered among its assets six insurance policies on Fruehauf's life which had been bought, paid for, and owned by Fruehauf's wife. Under the terms of his wife's will, the trustees and executors were granted a variety of powers over the life insurance policies including the power to surrender the policies for their cash value. At the time of Fruehauf's death the life insurance policies had not yet been distributed to the trust, but the Internal Revenue Service included the value of the policies in his gross estate.

The Tax Court held the policies to be includable in Fruehauf's gross estate in an opinion, which suggested that possession in any capacity, fiduciary or otherwise, of powers in the nature of incidents of ownership in and of itself required inclusion of life insurance policies in the gross estate. *Estate of Harry R. Fruehauf*, 50 T.C. 915 (1968).

On appeal, the Sixth Circuit rejected such a broad *per se* rule of inclusion, stating that:

> \* \* \* we decline to hold that mere possession by a decedent of any powers in the nature of incidents of ownership in a fiduciary capacity invariably requires inclusion of the proceeds of the policies on the decedent's life in his gross estate. [*Estate of Fruehauf*, 427 F.2d at 85.]

The court then held, however, that the proceeds of the policies were nevertheless includable in Fruehauf's gross estate, because Fruehauf could exercise the powers he possessed over the policies for his personal benefit. The court pointed out that

Fruehauf was authorized by the terms of the will, both as an executor and as a trustee, to surrender the insurance policies for their cash value, and that if this power had been exercised, the income of the trust would have been increased to the direct benefit of Fruehauf who was the income beneficiary of the trust. *Estate of Fruehauf*, 427 F.2d at 86.

In an effort to overcome the formidable obstacle presented by *Estate of Fruehauf*, plaintiffs challenge the rationale of that decision and argue that their position is supported by *Estate of Skifter v. Commissioner of Internal Revenue*, 468 F.2d 699 (2d Cir. 1972). Plaintiffs further maintain that since the decedent in this case was a resident of Connecticut, a state within the jurisdiction of the Second Circuit, this court should follow *Estate of Skifter* rather than *Estate of Fruehauf* in deciding this case.

*Estate of Skifter* involved facts which are very similar to those in both the instant case and *Estate of Fruehauf*, with one critical distinction. In *Estate of Skifter*, the Second Circuit found that the decedent, Skifter, had assigned all of his interest in the nine life insurance policies at issue, and that he had retained no interest in or power over them. Although as trustee he was granted broad powers of management and control over the trust, the court specifically found that "there was no way in which Skifter could have exercised his powers to derive for himself any economic benefits from these insurance policies." 468 F.2d at 702. The court also declared that:

> The core of the controversy here centers on the decedent's power, as trustee, to prefer the current income beneficiary over the remainderman and all later income beneficiaries through payment of the entire trust corpus. He did not have the power to alter or revoke the trust for his own benefit and he could not name new, additional, or alternative beneficiaries. * * * [468 F.2d at 702–03.]

Finally, the Second Circuit noted that its conclusion was consistent with the views expressed by the Sixth Circuit in *Fruehauf*. No more need be said to demonstrate that *Estate of Skifter* is clearly distinguishable from the instant case.

██ We therefore hold that the decedent possessed incidents of ownership in the five insurance policies on his life held by the trust of which he was both a trustee and an income beneficiary, and that accordingly, the policies are includable in the decedent's gross estate under section 2042(2). Plaintiffs have advanced several other arguments, essentially equitable in nature, as to why the insurance policies should not be included in the decedent's gross estate. Upon careful consideration of these arguments, we deem them to be without merit. For the reasons stated above, the defendant's motion for summary judgment is granted; the plaintiffs' motion is denied, and the petition is dismissed.