Nancy C. TERRIBERRY, Bruce T. Terriberry and Sarasota Bank & Trust Co., on behalf of the Estate of G. Gilson Terriberry, Plaintiffs-Appellees,

v.

UNITED STATES of America, Defendant-Appellant.

No. 74–2898.

United States Court of Appeals, Fifth Circuit.

Aug. 8. 1975.

Rehearing Denied Sept. 23, 1975.

John L. Briggs, U. S. Atty., Claude H. Tison, Jr., Asst. U. S. Atty., Jacksonville, Fla., Scott P. Crampton, Asst. Atty. Gen., Gilbert E. Andrews, Chief, Appellate Section, Daniel C. Perri, Michael L. Paup, Jeffrey S. Blum, Attys., Tax Div., Dept. of Justice, Washington, D. C., for defendant-appellant.

Icard, Merrill, Cullis, Timm & Furen, Curtis J. Timm, Sarasota, Fla., for plaintiffs-appellees.

Before CLARK, Associate Justice *, and GOLDBERG and AINSWORTH, Circuit Judges.

Mr. Justice CLARK:

At issue on this appeal is some $16,000 in federal estate taxes paid by appellee, Mrs. Nancy Terriberry, upon the death of her husband, Gilson Terriberry, on seven insurance policies transferred to her some years ago and covering his life. Upon Gilson's death, the Government claimed that he had sufficient "incidents of ownership" in the policies within the meaning of 26 U.S.C. § 2042(2)[1] to require that the proceeds be included in his estate for tax purposes. Mrs. Terriberry paid the tax and brought this suit in United States District Court for the Middle District of Florida to recover the payment. The District Court concluded that the incidents of ownership were too remote to make the proceeds includable

in Gilson's estate. Though recognizing the apparently good faith efforts of appellee and her late husband at the time of the original transfer to avoid this problem, we nevertheless hold the instant case controlled by *In re: Estate of Lumpkin*, 474 F.2d 1092 (5th Cir. 1973) and *Rose v. United States*, 511 F.2d 259 (5th Cir., 1975).

I.

The record stipulations indicate that in the 1940's Gilson transferred to his wife, Nancy, the absolute and sole ownership of seven insurance policies on his life worth some $115,000. Subsequently, the Terriberrys moved to Florida after his retirement. In 1964, having heard that probate costs were high, they inquired as to how the impact of such expenses might be lessened and were advised to create separate inter vivos, revocable trusts. Each of the Terriberrys wished to retain control of their respective estates but were advised that Florida law required that someone other than a grantor-beneficiary be named co-trustee of such a trust. A form of trust agreement was drawn by counsel in which Gilson and Nancy named each other as co-trustees of their respective trusts, along with the Sarasota Bank as successor trustee of each. Nancy desired to transfer the seven insurance policies to the trust. Before executing the trust instrument, she wrote to each of the two insurance companies who carried the policies, enclosing a copy of the agreement and advising them of her intentions. In a letter of June 15, 1964, she stated:

> The purpose of the wording for my Agreement is to make it clear that I have all the incidents of ownership of the policies on my husband's life and, without the consent of any Trustee(s) or beneficiary, may exercise any option, etc., given under these contracts. Should I predecease my husband, all

---

* Of the Supreme Court of the United States (Retired), sitting by designation.

1. Section 2042 provides: "The value of the gross estate shall include the value of all property—. . . (2) To the extent of the amount

receivable by all other beneficiaries as insurance under policies on the life of the decedent with respect to which the decedent possessed at his death any of the incidents of ownership, exercisable either alone or in conjunction with any other person.

incidents of ownership become vested in the Trustee(s) and further, if my husband is a Trustee or Co-Trustee, ownership will not vest in him as an individual but only in his representative capacity.

Five policies issued by Mutual Benefit, however, included special settlement options which allowed the policy value to be paid out as an annuity. Regarding these provisions, Nancy further stated in her letter to that company:

As mentioned in my letter of March 3, while one or both of my husband and myself are living we might wish to take advantage of the very old annuity options in some or all of the contracts particularly in case of a violent inflation. These rates should be available to either the cash value or the maturity value. Your letter of March 5, indicates that these options and rates would be available under the arrangements we are preparing.

Mutual Benefit had earlier informed her:

Ordinarily, settlement options are available only to beneficiaries who are natural persons taking in their own right and not to trustees or other fiduciaries. However, in your case if you or Mr. Terriberry were the trustee we would be willing at the surrender or maturity of the policy to permit such trustee to elect a settlement option based on your life or the life of your husband provided you or your husband, as the case may be, is then the beneficiary of the trust and the right to take such action is included in the trust. In such a situation, the one of you who acts would merely be electing an option as trustee for yourself instead of directly as an individual.

In response to the June letter, Mutual Benefit stated:

Mr. Stoddart [Associate Counsel of the Company] believes it would be more appropriate for you to transfer ownership of the policies on your life as well as on the life of your husband to the trustees at this time. We could then furnish papers for such ownership for your signature to become a part of the policies. Under such an agreement your signature would be required to any changes in the policies during your lifetime or if you were incompetent or deceased by the trustees acting at that time. The life income option in the policy contract would be available on your life, if living, otherwise on the life of your husband.

In July of 1964, Nancy executed the trust agreement and transferred the insurance policies to it. Included among the trust's provisions were the following:

### "ARTICLE III

"The Grantor hereby agrees to transfer ownership of the life insurance contracts listed on the schedule of property attached hereto to the Trustee(s) in, but only in, its fiduciary capacity and not as individuals, and further to designate the individual and/or corporate Trustee(s) as the beneficiaries of such contracts of insurance. With respect to said insurance contracts, the Grantor agrees to pay the premiums and other charges, if any, necessary to keep such insurance in force without any duty on the part of any Trustee(s) herein named to see to the payment of same.

"With respect to said insurance contracts it is, however, expressly understood and agreed as follows:

"1. That the transfer of ownership by the Grantor to the Trustee(s) of such insurance contracts shall not vest ownership of such contracts in the Grantor's husband, G. Gilson Terriberry, individually but only in his fiduciary capacity.

"2. That the Grantor's husband, G. Gilson Terriberry, in the administration and ownership of said contracts of insurance, as Trustee or Co-Trustee hereunder, is expressly prohibited from exercising any of the incidents of ownership thereof in his individual capacity and further prohibited from making any use, disposition, retention or other control thereof, either individually or as Trustee or Co-Trustee, except as herein directed.

"3. To the extent permitted by the contracts of insurance and the insuring

companies, but only to the extent that ownership of the contracts of insurance shall not become vested in the Grantor's husband, G. Gilson Terriberry as an individual, the Grantor and her husband, G. Gilson Terriberry, or either of them, as Trustee(s) may upon surrender or maturity of the insurance contracts elect a settlement option based upon the life of either the Grantor or her said husband, G. Gilson Terriberry, Provided, they or either of them are, at the time of the election of such settlement option, a beneficiary of the trust."

In addition, the agreement provided in Article II that Nancy had the unfettered right to revoke or amend her trust or to remove any trustee at any time.

The settlement option was never exercised, and Gilson died on May 21, 1968. The Government assessed all seven policies as his property and this suit followed.

## II.

The Internal Revenue Service has issued regulations interpreting 26 U.S.C. § 2042(2), in part, as follows:

(4) A decedent is considered to have an "incident of ownership" in an insurance policy on his life held in trust if, under the terms of the policy, the decedent (either alone or in conjunction with another person or persons) has the power (as trustee or otherwise) to change the beneficial ownership in the policy or its proceeds, or the time or manner of enjoyment thereof, even though the decedent has no beneficial interest in the trust. Moreover, assuming the decedent created the trust, such a power may result in the inclusion in the decedent's gross estate under section 2036 or 2038 of other property transferred by the decedent to the trust if, for example, the decedent has the power to surrender the insurance policy and if the income otherwise used to pay premiums on the policy would become currently payable to a beneficiary of the trust in the event that the policy were surrendered.

Applying this approach to the circumstances of the instant case, the Government takes the position that Gilson's right as a trustee to elect a settlement option under Article III(3) of the trust agreement is a power to change "the time or manner of enjoyment" of the insurance policy and is therefore an "incident of ownership" under § 2042(2). We agree. Under recent precedent in this Circuit, appellee cannot escape the inexorable sweep of that provision of the Code.

Two years ago, this Circuit held that the proceeds of an insurance policy was includable in the gross estate even though the only power exercisable by an insured was the right to elect among certain limited settlement options. *In re Estate of Lumpkin*, 474 F.2d 1092 (5th Cir. 1973). More recently, in *Rose* v. *United States*, 511 F.2d 259 (5th Cir. 1975), Judge Goldberg concluded that an insured cannot relieve himself of liability under § 2042(2) by transferring ownership of the policies to a trust and merely assuming a fiduciary capacity as a trustee. The facts in the instant case lie at the logical junction of *Rose* and *Lumpkin,* and no significance can be attached to the intervention of a third party as trust grantor.

Appellee strenuously urges that Art. III(2) of the trust agreement expressly prohibited her husband "from exercising any of the incidents of ownership" of the policies and that, hence, he was effectively prevented from electing any settlement option. We cannot accept appellee's ingenious nullification of the express provisions of Article III(3) by this preferred reliance on Article III(2)'s all-purpose incantation or on its sister phrases in Article III(1) or III(3). Similarly we are unpersuaded by the existence of an absolute power in Nancy as grantor to revoke the trust or to remove her husband as trustee. The critical moment is the date of decedent's death, *cf. Lober* v. *United States*, 346 U.S. 335, 74 S.Ct. 98, 98 L.Ed. 15 (1953), and it is enough that the power remained in existence at that point, even though un-

used and defeasible, *cf. Johnstone* v. *Commissioner*, 76 F.2d 55 (9th Cir. 1935). The fact of the matter is that she did not remove him as trustee and he died, possessed of a power to affect the time and manner of enjoyment of the proceeds of a life insurance policy on his own life.[2] Under our cases,[3] this brings the situation within § 2042(2), and we are obliged to reverse.

Reversed.

AINSWORTH, Circuit Judge (dissenting):

I am unable to concur in the majority opinion because of being in fundamental disagreement with the holding that decedent had incidents of ownership in the life insurance policy at the time of his death. I also disagree that the case is controlled by this Court's prior decisions in In re: Estate of Lumpkin, 5 Cir., 1973, 474 F.2d 1092, and Rose v. United States, 5 Cir., 1975, 511 F.2d 259. The peculiar facts and circumstances of the present case are greatly dissimilar to those in the cited cases.

The carefully detailed opinion of District Judge Krentzman is attached hereto and represents my views in dissent. Judge Krentzman distinguished both *Lumpkin* and *Rose* (District Court decision). Subsequently, this Court affirmed the District Court in *Rose*.

This case differs from the cited cases especially in the fact that the Terriberry trust herein was revocable. In *Rose* the trusts were irrevocable. In *Lumpkin* there was no fiduciary relationship as here and in *Rose*; also *Lumpkin* had the right under the optional settlement provisions of the policy to vary the time and manner in which the proceeds would be paid to the beneficiary after his death. We held that such right was an incident

of ownership within the purview of Section 2043.

Here, the Terriberry trust was revocable and Nancy Terriberry retained the right to amend, modify or revoke her trust and to remove the decedent as a co-trustee at any time. Thus she effectively retained all incidents of ownership in the policies as the grantor of the trust, and none was possessed by the decedent.

## APPENDIX

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

This is a suit brought by plaintiffs against the United States for the recovery of federal estate taxes of $16,605.18 plus statutory interest thereon, representing additional estate taxes resulting from the inclusion of seven insurance policies on decedent's life in his taxable estate.

The question presented for determination is whether the decedent had sufficient incidences of ownership in the seven life insurance policies on his life, which incidences of ownership were held in a fiduciary capacity, to cause the policy proceeds to be taxable in decedent's estate for federal estate tax purposes under Section 2042 of the Internal Revenue Code of 1954.

The issue was submitted for decision on stipulated facts and memoranda and argument of counsel. The Court has considered the same and finds:

### FINDINGS OF FACTS

1. G. Gilson Terriberry (hereinafter referred to as "decedent") died on May 21, 1968.

2. Prior to July 23, 1964, decedent's wife, Nancy C. Terriberry, (hereinafter

---

[2] The estate failed to introduce any evidence to show that similar lifetime settlement options were not available with respect to the two Connecticut Mutual policies, as it was of course obliged to do if it were to show its entitlement to a refund.

[3] To the extent that *Skifter* v. *Commissioner*, 468 F.2d 699 (Second Cir. 1972), and *Estate of*

*Fruehauf* v. *Commissioner*, 427 F.2d 80 (6th Cir. 1970), recognize a different rule, this Circuit has chosen not to follow them. *See Lumpkin, supra,* 474 F.2d at 1097, n. 18. Nor is the Eighth Circuit's decision in *Swanson Jr. et al.* v. *Commissioner*, 518 F.2d 59 apposite to the instant case.

referred to as "Nancy"), was the absolute owner of the seven insurance policies on decedent's life in issue and decedent had no incidences of ownership of any type in said policies.

3. Prior to 1964, decedent and his wife moved to the State of Florida. They were advised that the cost of probate administration of an estate in Florida was very high and that such costs could be eliminated if each created a revocable trust and placed all of his or her assets in such trusts. They were further advised that such a trust would not be legal or valid in the State of Florida if each was the sole grantor, sole trustee and sole beneficiary of his or her trust and that if each desired to also be a trustee of his or her trust, it would be necessary that a co-trustee also be selected.

4. Pursuant to such advice and to avoid probate administration and to retain control over her individual assets, on July 23, 1964, Nancy as grantor entered into a revocable trust agreement with herself and the decedent as co-trustees and the Sarasota Bank and Trust Company as successor co-trustee. Nancy appointed the decedent as co-trustee of her trust solely for convenience to insure that said revocable trust was valid under Florida law.

5. Prior to establishing her revocable trust, Nancy had expressed a desire to transfer the seven life insurance policies which she owned on the life of her husband to said trust so that if she predeceased her husband, these life insurance policies would not be in her probate estate and thus subject to probate expenses.

6. In a letter to the Mutual Benefit Life Insurance Company (the issuer of five of the policies in issue) dated June 15, 1964, she enclosed a copy of the proposed revocable trust agreement she would execute and referred the insurance company particularly to Article III which pertained to life insurance policies transferred to the trust and the rights and ownership of the trustees therein. She stated in said letter that:

"The purpose of the wording for my agreement is to make it clear that I have all the incidences of ownership of the policies on my husband's life and, without the consent of any trustee(s) or beneficiary, may exercise any option, etc. given under these contracts." (This is a quote from letter Exhibit 19.)

7. On June 21, 1964, Nancy wrote a similar letter to Connecticut Mutual Life Insurance Company, the issuer of the other two policies, enclosing a draft of the trust agreement and indicated that the purpose of the wording for her trust was to insure that she would have all incidences of ownership of the policies on her husband's life.

8. In response to Nancy's correspondence, Mutual Benefit indicated as to the five policies on decedent's life owned by Nancy that even after transfer of ownership of said policies to said trust, Nancy's signature would be required to make any changes in the policies during her lifetime. Connecticut Mutual in its correspondence indicated that a provison should be made for the disposition of the policies in the event the trust was not in existence at the time of the insured's death.

9. Nancy's trust was created on July 23, 1964, and the seven insurance policies were subsequently transferred to said trust subject to the provisions of such trust agreement and were immediately deposited with the Sarasota Bank & Trust Company as agent for the trustees under an agency agreement and were in the possession of the Sarasota Bank and Trust Company under the agency agreement at the time of decedent's death.

10. Under Nancy's trust, the rights and powers of decedent as a co-trustee in respect to the seven insurance policies were set forth in Sections 1, 2 and 3 of Article III of said trust and are set forth verbatim hereafter.

"1) That the transfer of ownership by the Grantor to the Trustee(s) of such insurance contracts shall not vest ownership of such contracts in the Grantor's husband, G. Gilson Terriberry, in-

dividually, but only in his fiduciary capacity."

"2) That the Grantor's husband, G. Gilson Terriberry, in the administration and ownership of said contracts of insurance, as trustee or co-trustee hereunder, is expressly prohibited from exercising any of the incidences of ownership thereof in his individual capacity and further prohibited from making any use, disposition, retention or other control thereof, either individually, or as trustee or co-trustee, except as herein directed."

"3) To the extent permitted by the contracts of insurance and the insuring companies, but only to the extent that ownership of the contracts of insurance shall not become vested in the Grantor's husband, G. Gilson Terriberry as an individual, the Grantor and her husband, G. Gilson Terriberry, or either of them, as Trustee(s) may upon surrender or maturity of the insurance contracts elect a settlement option based upon the life of either the Grantor or her said husband, G. Gilson Terriberry; provided, they or either of them are, at the time of the election of such settlement option, a beneficiary of the trust."

11. Article V of Nancy's trust further provided that decedent could never act as sole trustee and Article II provided that Nancy had the right to revoke or amend the trust at any time without the consent of anyone and that she further had the right at any time to remove any trustee under said trust agreement.

12. Nancy's trust and the agency agreement thereunder were in effect at the time of decedent's death.

## CONCLUSIONS OF LAW

1. The Court has jurisdiction over this matter by virtue of the provisions of 28 U.S.C. Section 1346(2).

2. Section 2042 of the Internal Revenue Code covers the estate taxation of proceeds of life insurance. Subparagraph (2) of such section provides that the value of the gross estate shall include the value of life insurance receivable by beneficiaries other than the insured to the extent with respect to which the decedent possessed at his death any of the incidences of ownership exercisable either alone or in conjunction with any other person.

3. Treasury Regulations, Section 20.-2042–1(c)(2) defines the term "incidences of ownership" as follows:

"  .  .  .  generally speaking, the term has reference to the right of the insured or his estate to the *economic benefit* of the policy." (underlining (or italics) supplied)

4. Subsection (4) of Section 2042–1(c) *of the same regulation* provides that a decedent is considered to have an incidence of ownership in an insurance policy on his life held in trust if the decedent (alone or in conjunction with another person or persons) has power to change the beneficial ownership in the policy or its proceeds even though decedent had no beneficial interest in the trust.

5. The scope of this particular subsection of the regulation has been narrowed by recent judicial interpretation, first in *Estate of Fruehauf v. Commissioner,* 426 F.2d 80 (C.A. 6 1970) and later in *Estate of Skifter v. Commissioner,* 468 F.2d 699 (C.A. 2 1972). The Sixth Circuit in *Fruehauf* hold that mere possession by decedent of any powers in the nature of incidences of ownership in a fiduciary capacity does not invariably require inclusion of the proceeds of the policy on decedent's life in his gross estate and where the decedent possesses the requisite powers over policies on his life solely as a transferee in a fiduciary capacity, with no beneficial interest therein, such powers do not constitute incidences of ownership within the meaning of Section 2042(2). In *Skifter,* decided after *Fruehauf,* the Tax Court held that even though the decedent as a trustee in that case possessed power to affect beneficial ownership of the policies as well as the proceeds therefrom, none of the powers could have been exercised by decedent for his own benefit. The Second Circuit in *Skifter* rejected the Commissioner's

argument that his Regulation 20.-2042(1)(c)(4) required the inclusion of said policies in decedent's estate because such regulation covered ownership as a trustee. In *Skifter*, the decedent at the time of his death was the sole trustee of an irrevocable trust for the benefit of his wife's daughter which included life insurance policies on his life. The Second Circuit rejected this contention noting that although such powers might well constitute an incidence of ownership if retained by the assignor of the policies, "it is not an incidence of ownership within the intended meaning of Section 2042 when it has been conveyed to the decedent long after he had divested himself of all interest in the policies and when he cannot exercise the power for his own benefit." (CCH Page 8600)

6. The Government relies on the District Court case of *Rose v. United States*, 5 Cir., 511 F.2d 259 which relies on the rule set forth by the Fifth Circuit in the *Estate of Lumpkin*, 474 F.2d 1092 that the mere possession of an incidence of ownership will cause the policy proceeds of an insurance policy to be taxable in the decedent's estate and that the manner and capacity in which he possessed it are immaterial. It is noted here that although the *Lumpkin* case involved estate taxation of life insurance, it did not involve ownership of life insurance in a fiduciary capacity as does the present case. The decedent in *Lumpkin* was an employee of a large oil company and as such was covered by a non-contributory group term life insurance policy. Under the optional settlement provisions of the policy, the decedent had the right to vary the time and manner in which the proceeds would be paid to the policy-designated beneficiaries after his death. The Fifth Circuit held that such right was an incidence of ownership within the purview of Section 2042 causing the includability of the group life insurance proceeds in his taxable estate even though decedent could not benefit himself or his estate by exercising such rights.

7. The fact in *Lumpkin* were so different from the facts in the case at bar and the similar fact situations in *Fruehauf* and *Skifter* that the Fifth Circuit in deciding *Lumpkin* had no occasion to rule on the question of incidences of ownership held in a fiduciary capacity. This is clearly demonstrated by the fact that although *Lumpkin* was decided after *Skifter* and *Fruehauf*, neither landmark case in this area is even mentioned or cited in the *Lumpkin* opinion. Thus, *Lumpkin* is no authority for the instant case.

8. In *Rose* the District Court relied on *Lumpkin* without distinguishing the reasoning and discussions of the issues by the Sixth Circuit in *Fruehauf* and the Second Circuit in *Skifter*.

9. Although *Rose* is a case involving incidences of ownership of life insurance policies held in a fiduciary capacity, the facts in *Rose* are distinguishable from the facts in this case. The decedent in *Rose* was the sole trustee. In the instant case, decedent was merely a co-trustee to meet the legal requirements of a grantor trust in the State of Florida. In *Rose*, the ownership of the three insurance policies was absolutely vested in the decedent even though in a fiduciary capacity.

10. The decedent in *Rose* had the following powers in respect to the insurance policies:

A. Power to pay income of the trust after the beneficiaries reached eighteen (18) years.

B. Power to convert the policies to ten (10) pay life or endowment policies.

C. Power to withdraw dividend accumulations or surrender dividends for cash value.

D. Power to borrow on the policies.

E. Power to cancel the policies.

F. Power to change the beneficial ownership.

There were no limitations in *Rose* on the decedent's sole trustee's powers in the trust instrument over the subject insurance policies. In this case, the decedent as a co-trustee was specifically denied these powers.

11. The insurance companies in *Rose* apparently recognized the decedent sole trustee as the sole owner of the subject policies whereas the insurance companies in the present case, particularly Mutual Benefit, concluded that even after the transfer of the policies to Nancy's trust, nothing could be done with the subject policies without her signature. Finally, the trusts over which the decedent was sole trustee in *Rose* were irrevocable whereas in the instant case, Nancy's trust was a revocable grantor trust.

12. In Nancy's trust, she reserved the right to amend or revoke the trust at any time. She reserved the right to remove any trustee at any time including the decedent. Thus, decedent continued to act as trustee at the whim of his wife and could be removed literally at the snap of her finger.

13. The specific limitations contained in Article III of Nancy's trust denying decedent the right to exercise any incidence of ownership effectively prohibited decedent from possessing incidences of ownership in the life insurance policies as would make the value thereof includable in his gross estate for estate tax purposes.

14. Assuming that the new and broader test for includability of insurance policies held in a fiduciary capacity set forth in *Rose* is correct, because the trust in this case is a revocable or grantor trust, the grantor, Nancy, is treated as the owner for all tax purposes of the trust corpus and thus of the subject insurance policies. See Section 2038 of Internal Revenue Code as to estate taxes and Section 677(a) and Section 673(a) of Internal Revenue Code as to income taxes. This treatment of the grantor of a revocable trust as the owner by the Government was most recently again affirmed in Revenue Ruling 73–584, I.R.B. 1973–52, 12 where the Service held that the transfer of an instalment obligation to a revocable trust created by the transferor did not result in a "disposition" because the grantor as a result of his power to revoke is treated as the owner of the entire trust.

15. Under the new and broader test for includability of insurance policies held in a fiduciary capacity set forth in *Rose,* the seven policies would still not be includable in decedent's estate. A grantor of a revocable trust containing the provisions of Nancy's trust is treated for all tax purposes as the owner of the trust corpus which here includes the seven insurance policies. Conversely, the mere assignment of an insurance policy to a trust in which the owner retains the right of revocation or the mere naming of the trust as a beneficiary under an insurance policy is insufficient to remove the policies from the grantor's estate. Section 2038, Internal Revenue Code.

16. By retaining the right to amend, modify or revoke her trust and to remove the decedent as a co-trustee at any time, Nancy effectively retained all incidences of ownership in the subject policies as the grantor of said trust. The treatment of the grantor of a revocable trust as the owner of the trust corpus is required by Section 2038 of the Internal Revenue Code as to estate taxes and Sections 673 and 677 of the Internal Revenue Code as to income taxes. The decedent's appointment as a co-trustee could have been terminated at any time and he thus had no real power or authority over the subject insurance policies equivalent to an incident of ownership under Section 2042. The transfer of the insurance policies on decedent's life from Nancy to her revocable trust created no income, gift or estate tax consequences and such transfer is treated for tax purposes, in effect, as not being made.

17. For the foregoing reasons, plaintiff is entitled to recover from defendant the sum of $16,605.08 plus statutory interest and their costs.

18. Judgment will be entered accordingly.

It is so ordered this 16 day of May, 1974.

s/Ben Krentzman
Ben Krentzman, U. S. District Judge