ESTATE of Harold John DEOBALD
(through its Executrix, Frances
M. Deobald)

v.

UNITED STATES of America.

Civ. A. No. 75–1782.

United States District Court,
E. D. Louisiana.

Dec. 28, 1977.

Joel A. Mendler, Baldwin, Haspel, Molony, Rainold & Meyer, New Orleans, La., for plaintiff.

Leonard P. Avery, Asst. U. S. Atty., New Orleans, La., Fred W. Schwendimann, Dept. of Justice, Tax Div., Dallas, Tex., for defendant.

JACK M. GORDON, District Judge.

## MEMORANDUM AND ORDER

The plaintiff, Estate of Harold J. Deobald, and the defendant, United States of America, have filed cross-motions for summary judgment on issues concerning estate tax assessments against the deceased's estate.

Harold J. Deobald died January 22, 1972, while domiciled in Jefferson Parish, Louisiana. His spouse, Mrs. Frances Deobald, was duly qualified as executrix of his estate. A federal estate tax return was duly filed and the estate taxes paid.

After audit, an estate tax deficiency was assessed in the amount of $6,306.46, part of

which was attributable to the inclusion in decedent's gross estate of: (1) the decedent's contributions to the U.S. Civil Service Retirement System, or $14,495.00, and (2) one-half the value of 619 shares of Cleveland Trust Co. and 282 shares of Central National Bank of Cleveland, or $28,-876.50. The estate paid the assessment, and subsequently petitioned to recoup that amount, contending that portions of the funds in the two aforementioned transactions did not constitute part of the gross estate.

## WHETHER THE SURVIVING SPOUSE'S SHARE OF THE COMMUNITY INCOME CONTRIBUTED TO THE CIVIL SERVICE RETIREMENT FUND SHALL BE DEDUCTED FROM DECEDENT'S GROSS ESTATE

Plaintiff suggests that the estate should not include the full value of the retirement fund contributions made by the deceased, even though the Retirement Act characterizes all death benefit funds as the decedent's separate property. 5 U.S.C. § 8331, et seq. Rather, plaintiff contends that the Internal Revenue Service should allow as a debt in Schedule K of the federal estate tax return the reimbursement due by decedent's separate estate to the surviving spouse for the enhancement of decedent's separate estate at the expense of the community assets. LSA C.C. Art. 2408 provides in part:

When the separate property of either the husband or the wife has been increased or improved during the marriage, the other spouse . . . shall be entitled to the reward of one half of the value of the increase or ameliorations, if it be proved that the increase or ameliorations be the result of the common labor, expenses, or industry; . . .

Plaintiff relies on a series of Louisiana cases that allow the community to gain reimbursement from the separate property of one spouse when shown that community funds were expended to enhance that separate property. *Abraham v. Abraham*, 230 La. 78, 87 So.2d 735 (1956). In *Blalock v.*

*Blalock*, 259 So.2d 367 (La.App.2d Cir. 1972) the husband was allowed to claim one-half of his spouse's Teacher's Retirement Fund, statutorily designated as the wife's separate property, since contribution to that fund was made from community income. Plaintiff requests that the value of Mrs. Deobald's contribution, which is one-half the employee contribution, should be deducted from the gross estate.

Plaintiff urges that it is axiomatic that state law governs the determination of a claim against an estate for federal estate purposes. Section 2053(a) of Title 26, United States Code, provides in part:

. . . For purposes of the tax imposed by section 2001, the value of the taxable estate shall be determined by deducting from the value of the gross estate such amounts—

. . . . .

(3) for claims against the estate, and

. . . . .

as are allowable by the laws of the jurisdiction, whether within or without the United States, under which the estate is being administered.

To demonstrate the application of this statute to the estate tax plan, plaintiff refers the Court to the *Estate of Wildenthal*, 29 TCM 519 (1970). There, the decedent owned four insurance policies as his own separate property, with his wife designated as beneficiary. The policy premiums were paid with community funds. Under Texas law, the wife was allowed to claim a reimbursement from the decedent's estate for one-half of the community funds expended. The Court agreed with the taxpayer's argument that the gross estate for federal estate tax purposes should be reduced by one-half the community funds expended. Plaintiff requests that the same ruling should be rendered in the present matter where contributions to the Civil Service Retirement Fund are at issue.

In response to plaintiff's position, the United States argues that Congress has opted to deny any estate tax deductions for state law claims against the Civil Service

Retirement System proceeds, on the grounds that (1) Congress has already afforded the taxpayer preferential tax treatment by excluding a part of the proceeds from the estate; and (2) a paramount Congressional consideration looming behind enactment of the Civil Service Retirement Act, 5 U.S.C. §§ 8331–8348, would be upset by granting the requested deduction.

The Government urges that 26 U.S.C. § 2039(c) grants preferred tax treatment to an estate containing funds from a qualified employee trust such as the Civil Service Retirement Fund by excluding from the gross estate of the decedent the contributions made by the employer to the qualified retirement fund. In exchange for such treatment, the Government contends, Congress statutorily requires that all employee contributions to the Civil Service Retirement Fund (which presumably would include the spouse's community interest in the contributions) be included in the deceased employee's gross estate.

In the Government's second argument for denying the requested deduction, it relies heavily on its own Internal Revenue Service ruling involving a "debt deduction" issue similar to the issue presently before this Court, where the Service opined that a state's community property laws would not affect payments of annuities, death benefits, or refunds from the Civil Service Retirement Act funds. Revenue Ruling 57–466, 1957–2 Cumulative Bulletin 619. The Service grounded its holding on the Supreme Court decision in *Wissner v. Wissner*, 338 U.S. 655, 70 S.Ct. 398, 94 L.Ed. 424 (1950).

The Court has fully considered the Government's first contention that 26 U.S.C. § 2039(c) precludes the Estate of Deobald from taking a debt deduction pursuant to 26 U.S.C. § 2053(a), when that debt arises out of a spouse's community contribution to a qualified employee's trust such as the Civil Service Retirement Fund. The Government suggests that no other favorable tax advantages are allowed the taxpayer since 26 U.S.C. § 2039(c) has already allowed the estate to exclude employer con-

tributions to the fund from the gross estate. The Court finds this argument unconvincing, having found no statutory or jurisprudential authority declaring the effects of 26 U.S.C. § 2039 and 26 U.S.C. § 2053 to be mutually exclusive.

Section 2039(c) creates an exclusion for certain assets from the decedent's estate in order to arrive at the gross estate for state tax calculations. While allowing the exclusion of all employer contributions to the fund, the statute does require that the decedent's contributions be included in his gross estate.

Section 2053(a), on the other hand, designates the deductions allowable from the gross estate. Included as deductible items are any claims against the estate as are recognized by the laws of the jurisdiction in which the decedent resided.

As in the federal income tax procedures, exclusions and deductions are separate though integral steps in the estate tax formula for arriving at the taxable assets in an estate. To allow a deduction based on a spouse's community property interest in contributions to a trust fund in no way runs afoul of the exclusion rules in Section 2039(c), since the two steps are separate aspects of the taxing formula.

A closer review of Section 2039 reveals to this Court that Congress in no way attempted to deny a spouse the right to one-half of the community contributions paid into the fund when it required that the decedent's contributions be included in the estate. Congress was completely aware that circumstances could arise in community property states where a spouse would have a legitimate claim to one-half of all community property contributions made to the fund. In fact, in Section 2039(d), the spouse that predeceases the employee may claim as an exclusion from his or her gross estate, the value of the interest (as created by the community property laws of the state) in the employer's contributions to the fund. Hence, in explicit fashion, Congress has recognized the community property interest in contributions to such retirement funds, and has determined that the estate

of that property owner should receive the taxing advantages or disadvantages attributable to the particular property. Likewise, Section 2039(c) cannot be in conflict with a federal statute that merely recognizes that a spouse's community interest in certain funds is a valid debt of the decedent's estate, and thereby deductible.

But perhaps the most convincing evidence that Section 2039(c) does not require a spouse's community property interest in retirement funds to be included in the decedent's gross estate, arises from the decision in Revenue Ruling 75–408, "Annuity paid to Teacher's Survivor; Texas," 1975–2 Cumulative Bulletin 369. There, the taxpayers requested advice on whether the exclusion provided in Section 2039(c) applied to a survivorship annuity payable under the teachers' retirement system of Texas; and secondly, requested advice as to the amount of the decedent's contributions includable in his gross estate where the contributions were from community funds. The Internal Revenue Service found that the retirement system did come within the scope of Section 2039(c) since it met the requirements of 26 U.S.C. § 401(a) [Federal Civil Service Retirement System also complies with 26 U.S.C. § 401(a)]. The Service went further in holding that only the decedent's interest in those contributions provided by him were to be included in his gross estate. "Further, since the decedent-employee's contributions to the plan were made from community funds, only one-half of the proportionate part of the benefits payable that are attributable to the decedent's contributions (determined pursuant to the apportionment formula set out in Section 2039(c) of the Code and Section 20.2039–2(c) of the regulations) is includable in the decedent's gross estate." Thus by the Government's own ruling, it has decided that the estate of the decedent can deduct the spouse's community interest in contributions to a fund [qualifying under Section 401(a)] from the gross estate for estate tax purposes.

This Court now turns its consideration to the Government's second contention that the holding in *Wissner, supra,* prevents any party from exercising community property

rights against the proceeds from the Federal Civil Service Retirement fund.

In *Wissner, supra,* the wife of a recently deceased serviceman, though not the named beneficiary of the proceeds of his serviceman's insurance policy, was claiming an interest in the proceeds under her California community property rights, allowing the wife reimbursement where premiums on the insurance policy had been paid with community funds. The Court first identified the paramount Congressional interest behind the enactment of the National Insurance Act, saying:

Certainly Congress in its desire to afford as much material protection as possible to its fighting force could wisely provide a plan of insurance coverage. Possession of government insurance, payable to the relative of his choice, might well directly enhance the morale of the serviceman. The exemption provision is his guarantee of the complete and full performance of the contract to the exclusion of conflicting claims. The end is a legitimate one within the congressional powers over national defense, and the means are adapted to the chosen end. (338 U.S. at 660, 661, 70 S.Ct. at 401.)

After recognizing that enforcement of the California community property law would frustrate this federal design by permitting persons other than the serviceman's designee to make claims to the insurance proceeds, the Court applied the federal preemption doctrine, holding that the National Insurance Act, and not state law, should be the controlling authority in determining the recipient of the policy proceeds.

The government's application of the *Wissner* facts and ruling would apparently unfold as follows: Congress, in enacting the Federal Civil Service Retirement Act, had a paramount interest in protecting the employee's designation of the recipient of the proceeds. Hence, this interest, as expressed in the federal legislation, must preempt any state law that might provide for ownership of the proceeds inconsistent with the employee's desire. Furthermore, since the

spouse cannot successfully exercise the community rights to the property, the decedent's estate cannot aver that such a debt is a valid one and deductible under Section 2053(a).

Because of several notable distinctions in the circumstances in *Wissner* with those in the present case, the Court cannot agree that *Wissner* is controlling on the issue of a Section 2053(a) debt deduction.

First, assuming arguendo that there is a paramount interest in having the proceeds of the retirement fund distributed to the employee's designee, the estate, in this situation, is not requesting that anything counter to that interest be done. In fact, the decedent left all the proceeds to his wife. Now, for estate tax purposes, the estate is requesting that the Government recognize the wife's interest in the proceeds as a deduction pursuant to federal statute 26 U.S.C. § 2053(a). Section 2053(a) grants a deduction for an estate debt when that debt is recognized under state law. Regardless of the federal interest behind the Civil Service Retirement Act, Louisiana law (LSA C.C. art. 2408) still recognizes that the wife has a one-half interest in community proceeds. Thus, not only does Section 2053(a), as a separate federal statute, operate independently of any paramount federal interest, but also, it in no way frustrates that interest since no proceeds are diverted from the decedent's designation.

Secondly, and reinforcing the above position that no paramount interest is violated, the Court sees no basic conflict between state law and federal law (as in *Wissner*) that would require that the supremacy clause be applied. The estate seeks to deduct Mrs. Deobald's interest in the retirement funds pursuant to a federal statute— 26 U.S.C. § 2053, and not under state law. Though the federal statute looks to the state law as a guideline for determining valid debts of the estate, it is the federal law that provides the right to a deduction sought by the Deobald Estate. Assuming that Section 2053(a) and the Federal Civil Service Retirement Act are in conflict, there would be no occasion to use the su-

premacy clause. The Court would in some way have to reconcile the differences. As expressed above, however, this Court has no reason to find that the statutes have conflicting purposes or results.

Thirdly, assuming that the circumstances here were similar to *Wissner* (the decedent-employee had designated the proceeds from the retirement fund to a party other than his wife and the wife was making a claim to the proceeds pursuant to a state law), the Court must disagree with the government's contention that such a designation would override the wife's community interest in the proceeds.

In *Free v. Bland*, 369 U.S. 663, 82 S.Ct. 1089, 8 L.Ed.2d 180 (1962), the Supreme Court first restricted its broad holding in *Wissner* that a federal mandate behind federal legislation (paramount interest) will preempt a state law, regardless of the results. In *Free, supra*, the Supreme Court applied the supremacy clause, holding that proceeds from federal savings bonds should be distributed according to federal law (Treasury regulations) rather than the community property law of the State of Texas. The Court, however, did qualify its imposition of the supremacy clause under such circumstances:

> Our holding is supported by *Wissner v. Wissner*, 338 U.S. 655, 70 S.Ct. 398, 94 L.Ed. 424. There the Congress made clear its intent to allow a serviceman to select the beneficiary of his own government life insurance policy regardless of state law, even when it was likely that the husband intended to deprive his wife of a right to share in his life insurance proceeds, a right guaranteed by state law. But the regulations governing savings bonds do not go that far. While affording purchasers of bonds the opportunity to choose a survivorship provision which must be recognized by the States, the regulations neither insulate the purchasers from all claims regarding ownership nor immunize the bonds from execution in satisfaction of a judgment. The Solicitor General, appearing as amicus curiae, acknowledges that there is an excep-

tion implicit in the savings bond regulations, including the survivorship provision, so that federal bonds will not be a "sanctuary for a wrongdoer's gains." With this, we agree. The regulations are not intended to be a shield for fraud and relief would be available in a case where the circumstances manifest fraud or a breach of trust tantamount thereto on the part of a husband while acting in his capacity as manager of the general community property. However, the doctrine of fraud applicable under federal law in such a case must be determined on another day, for this issue is not presently here. . . . (369 U.S. at 670, 82 S.Ct. at 1094.)

Here, the Supreme Court recognized that there were exceptions to the rule that state property law must yield to federal law in determining how property shall be distributed.

In *Yiatchos v. Yiatchos*, 376 U.S. 306, 84 S.Ct. 742, 11 L.Ed.2d 724 (1964), the Supreme Court finally entertained a matter where the doctrine of fraud applicable under federal law was at issue. In that case, the wife of the deceased savings bond owner sought to maintain her state community property interest in the proceeds of the bonds. Having been designated the beneficiary under the survivor clause, the brother of the decedent attempted to claim exclusive ownership to the funds. To decide the ownership question, the Court found it necessary to establish some guidelines for determining when an exception to a federal imperative (the survivor provision in the federal bond) should be found.

Under the federal regulations petitioner is entitled to the bonds unless his deceased brother committed fraud or breach of trust tantamount to fraud. Since the construction and application of a federal regulation having the force of law, *Public Utilities Comm'n. of California v. United States*, 355 U.S. 534, 542–545, 78 S.Ct. 446, 451–453, 2 L.Ed.2d 470; *Standard Oil Co. of California v. Johnson*, 316 U.S. 481, 484, 62 S.Ct. 1168, 1169, 86 L.Ed. 1611, are involved, whether or not there is fraud which will bar the named beneficiary in a particular case must be determined as a matter of federal law, *Free v. Bland*, supra; *Clearfield Trust Co. v. United States*, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838. But in applying the federal standard we shall be guided by state law insofar as the property interests of the widow created by state law are concerned. It would seem obvious that the bonds may not be used as a device to deprive the widow of property rights which she enjoys under Washington law and which would not be transferable by her husband but for the survivorship provisions of the federal bonds. (376 U.S. at 309, 84 S.Ct. at 745.)

Under the above guidelines this Court finds it highly probable that a determination of fraud could be made where the decedent through the survivorship declaration in the Civil Service Retirement Act prevents a wife from asserting her community property right of reimbursement to the retirement proceeds. Unlike the expressed Congressional design in the National Insurance Act of allowing a serviceman to select the beneficiary of his own Government life insurance policy regardless of whether it deprives his spouse of a state-law right to share in the proceeds, Congress did not go so far in its regulations governing federal savings bonds. Nor has the United States shown that Congress intended to allow the employees under the Civil Service Retirement Act to designate a beneficiary to the proceeds so as to deprive a spouse of his or her community property rights in a portion of those proceeds.

Consequently, were Mrs. Deobald making claims to her community interest in retirement fund proceeds delivered to a third party, this Court could not conclude that the reasoning in *Wissner* would be applicable. And, a fortiori, under the present circumstances where the estate seeks to obtain a debt deduction under federal statute 26 U.S.C. § 2053(a), the *Wissner* reasoning is certainly not persuasive.

Having found that 26 U.S.C. § 2053(a) (where it recognizes an estate debt under

LSA C.C. art. 2408) is neither inconsistent with nor subordinate to 26 U.S.C. § 2039(c) or any paramount interest behind the Federal Civil Service Retirement Act, 5 U.S.C. §§ 8331–8348, this Court agrees with plaintiff's position that the estate is allowed a debt deduction for one-half the value of the community contributions to the Civil Service Retirement Fund, or $7,247.50.

## WHETHER THE VALUE OF THE STOCK TRANSFERRED BY THE DECEDENT TO HIS WIFE SHALL BE EXCLUDED FROM DECEDENT'S GROSS INCOME

It has been stipulated by the parties that the shares of stock in question, though originally the decedent's separate property, were given to the decedent's wife and thereby, under Louisiana community property law, became her separate property. The government first suggests, and the Court agrees, that the income generated from the separate property of a wife will be considered community funds unless the wife exercises her rights under LSA C.C. art. 2386 and makes a notarial declaration designating all income as her paraphernal property. The government concludes that Mrs. Deobald's failure to so designate the income as separate property prior to the death of her husband, allowed the husband to continue his enjoyment of the transferred stock. Since Mr. Deobald maintained a 50% community interest in the income from the stock, the government asks that 50% of the value of the stock be included in his gross estate for taxation. As authority for this proposition, the government looks to 26 U.S.C. § 2036(a), which states in part:

> The value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer . . . under which he has retained . . . .
>
> (1) . . . the right to the income from, the property . . .

In response to the government's position, plaintiff argues that Mr. Deobald did not retain that "right" to the income, as required by the language in Section 2036(a), since Mrs. Deobald had the sole right to declare the income as her separate property and to then dispose of the stock and income as she desired. At the maximum, plaintiff argues, Mr. Deobald had the enjoyment of the income at the sufferance of his wife. Additionally, Mrs. Deobald presents an affidavit attesting: (1) that there was no agreement, expressed or implied, where she would refuse to declare the income her paraphernal property and thus secure her husband's interest to the income; and (2) that Mr. Deobald never received any income from the stock before his death. The government makes no attempt to dispute these attestations.

The government does suggest, however, that the applicability of 26 U.S.C. § 2036(a) is not contingent on demonstrating that the decedent specifically and intentionally retained an interest in the income. Rather, it argues, where the right of retention is granted by operation of law, the Court must find Section 2036(a) applicable. As the foundation for its argument, the government refers the Court to *Spiegel's Estate v. Commissioner of Internal Revenue*, 335 U.S. 701, 69 S.Ct. 301, 93 L.Ed. 330 (1949). In that matter, Mr. Spiegel made a transfer by trust of certain stocks to himself and to another but then died several years later. During his lifetime the trust income was to be divided among his three children; if they did not survive him, then to any of their surviving children. On his death, the corpus was to be distributed in the same manner. No provision was included in that agreement designating who should receive the income and corpus should the settlor survive all the designated beneficiaries. The government contended that the corpus and accumulated income should be included in Spiegel's gross estate since he retained a contingent interest in the trust fund. Although not expressly retained by him, under controlling state law, the property would have reverted to him had he survived the designated beneficiaries. The taxpayer contended that because the settlor's chance to get back his property

depended on state law and not on an express reservation by the settlor, it could not be shown that he intended the transfer to take place at the time of death. The Court made this observation:

> We add to that statement, if it can be conceived of as an addition, that it is immaterial whether such a present or future interest, absolute or contingént, remains in the grantor because he deliberately reserves it or because, without considering the consequences, he conveys away less than all of his property ownership and attributes, present or prospective. In either event the settlor has not parted with all of his presently existing or future contingent interests in the property transferred. (335 U.S. at 705, 69 S.Ct. at 303.)

Crucial to determining whether the decedent made a transfer with a "retained life estate" is a decision on what constitutes "retaining" in the spirit of Section 2036(a). This Court does not find the above interpretation by the *Spiegel* court controlling on this question. In *Spiegel, supra*, the Court sought to interpret a clause in 26 U.S.C. § 811(c), where the statute provides:

> To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise . . *intended to take effect in possession or enjoyment at or after his death.* (Emphasis added.) (335 U.S. at 703, 69 S.Ct. at 302.)

This clause in Section 811(c) was the predecessor of the existing Section 2037 and not of Section 2036, the statute under interpretation. Because the word "retain" was not contained in Section 811(c), the *Spiegel* court had no need to construe the term. Instead, the Court directed its probe to the phrase "intended to take effect in possession or enjoyment at or after death." It concluded that the effectiveness of the transfer in passing title to property and not the motive behind the transfer was the significant factor. Whether the same "objective test" must be used in considering if there has been a "retention" under Section 2036 has been answered, however, by applicable jurisprudence.

In *G. S. Pearson, Executive v. Campbell*, 62–2 USTC § 12, 120, the decedent purchased various stocks which were registered in his wife's name. It was decedent's intention to make a gift of those stocks to his wife. The stocks constituted the wife's separate property under applicable state law. The court noted, however, that dividends from these stocks were community property. Nevertheless, the court held:

> The interest of Mr. Pearson in these corporate stocks is not sufficient to make it a part of his taxable estate within the meaning of Section 2036(a) of the 1954 Code.
>
> No part of the stocks should be included in Mr. Pearson's taxable estate.

The court made a similar finding with respect to an oil royalty interest purchased by the decedent-husband with community funds but with legal title in the wife's name. The Court found that it was the husband's intention to make a gift to his wife and therefore Section 2036(a) did not apply.

In *Estate of Robert Wier*, 17 TC 409, 421 (1951), the Commissioner conceded in a Texas community property case "that none of the cash and securities transferred by the decedent to his wife are includable in decedent's gross estate by reason of a retention of an interest in the income from such property" even though income from separate property fell into the community under Texas law. (17 TC 421).

In *Meyers*, 27 TCM 975 (1968), decedent had made gifts of stock to his children. The children, in order to protect their father's future income, gave the decedent lifetime income rights to the stock. There was no evidence that the income was reserved by the decedent under the transfer. The Court held that the stock was not included in decedent's estate under Section 2036.

Thus the courts have taken the position that the transferor himself must initiate the action by which he maintains a right in the income after transferring the property, before there is a retention under Section

382

2036(a). Where he intends to make a complete and absolute gift of his property, though, unbeknownst to him, community property laws may reserve to him a right to income, the courts have consistently held that he retained no life interest.

The fact that the courts put emphasis on the subjective intent of the transferor at the time of the transfer rather than on the completeness of the transfer, becomes evident after perusal of the reasoning in *Estate of Gilman*, GSTC 296 (1975):

Section 2036(a) reflects a "legislative policy of subjecting to tax all property which has been the subject of an incomplete inter vivos transfer." . . . The policy is to include in a decedent's gross estate transfers which are in substance testamentary, i. e., "transfers which leave the transferor a significant interest or control over the property transferred during his lifetime."

Section 2036(a)(1) applies only where the decedent has "retained" enjoyment "under" the "transfer." This means that the enjoyment of the transferred property must be reserved "in connection with or as an incident to the transfer" . . . . The section applies only where a prearrangement, embodied in an express or implied agreement, permits the transferor to enjoy the benefits of the property or its income . . . . Thus, for example, the section does not apply where a husband transfers his interest in a residence to his wife and they continue to occupy it as the family home, unless, by agreement, he reserves the right to occupancy as an incident to the transfer. (Cases omitted.) The inquiry must be focused, therefore, on the agreements made by the parties on June 30, 1948, when the decedent's Gilman Paper common stock was transferred to the trust. The question is whether there was an express or implied agreement at the time of the transfer that decedent would continue to enjoy that stock or that the right to enjoy the stock would later be conferred upon him.

The government offers an additional authority for the proposition that a contingen-cy right as maintained by the decedent is sufficient to bring the transfer into the realm of a Section 2036(a) string transaction. In *Terriberry v. U. S.*, 517 F.2d 286 (5th Cir. 1975), the Court explained:

Similarly we are unpersuaded by the existence of an absolute power in Nancy as grantor to revoke the trust or to remove her husband as trustee. The critical moment is the date of decedent's death, cf. *Lober v. United States*, 346 U.S. 335, 74 S.Ct. 98, 98 L.Ed. 15 (1953), and it is enough that the power remained in existence at that point, even though unused and defeasible, cf. *Johnstone v. Commissioner*, 76 F.2d 55 (9th Cir. 1935). The fact of the matter is that she did not remove him as trustee and he died, possessed of a power to affect the time and manner of enjoyment of the proceeds of a life insurance policy on his own life. Under our cases, this brings the situation within § 2042(2), and we are obliged to reverse. (517 F.2d 289, 290.)

The above language is not an aid to an interpretation of Section 2036 since the Fifth Circuit in *Terriberry, supra*, was commenting on the statutory language in 26 U.S.C.A. § 2042(2). The Fifth Circuit had earlier explained the crucial distinction in applying Section 2036 and Section 2042 to transfer situations. "Thus, under Section 2036 and Section 2038 the decedent must have retained some control over property he initially transferred while under Section 2042 it is enough if at death the decedent merely possessed an incident of ownership, the means by which he came into possession being irrelevant." *In Re Estate of Lumpkin*, 474 F.2d 1092 (5th Cir. 1973). Understandably a contingency right subject to divestiture is an incident of ownership under Section 2042. It does not constitute a retention of a right to income, however, unless the grantor had the intent manifested in an agreement at the time of transfer, to maintain a contingency interest or right in the transferred property.

■ After considering Mrs. Deobald's affidavit and the stipulations entered into by the parties, the Court agrees that there was

no implied or explicit agreement at the time of the transfer allowing decedent to continue to enjoy the stock income or to have the right conferred to him at a later time. Based on the combination of factors such as (1) the nature of the contingency right to income [with the continued possession of that right solely in the power of his spouse], and (2) an absence of any implied or explicit agreement at the time of the transfer to retain an interest, this Court concludes that Mr. Deobald did not retain an interest in the stock, in a manner as anticipated by Section 2036(a).

After a review of the logic and direction of both parties' arguments on the "stock transfer" issue, the Court laments the fact that the government has chosen to prosecute this tax claim on such a hypertechnical basis. If the Court were to carry the government's legal contentions to their logical conclusion, then it would, in effect, be declaring that a husband and wife domiciled in Louisiana and living under a community property regime could never make a bona fide transfer to each other where the grantor absolutely, unequivocally, and irrevocably parts with all of his title, possession, and enjoyment of income-bearing community or separate property. For whatever the nature of a transfer between husband and wife of income-bearing property, Louisiana property law will either (1) preserve for the wife (grantor) an income interest in the transferred property (LSA C.C. art. 2402), or (2) preserve for the husband (grantor) a contingency income interest in the transferred property (LSA C.C. art. 2386). As in the present case, even where the husband has done everything unilaterally possible to make a complete gift to his wife, the Internal Revenue Service, by its proposed taxing scheme, would still have the right to tax the transferred property as part of the husband's estate. This Court must find such taxing rationality anomalous, and rejects the government's position. The Court thus orders that the entire value of the stock transferred to Mrs. Deobald shall be excluded from the gross estate of the decedent.

## ATTORNEY'S FEES AND COSTS

Plaintiff asks that a deduction from the gross estate of the decedent for attorney's fees in the amount of $2,000 and court costs in the amount of $107.20 be allowed by authority of IRC, Section 2053 and Section 20.2053–3(c)(2), Estate Tax Regulations. Plaintiff seeks to demonstrate the reasonableness of the fee by setting out the hours worked, and the nature of the labor performed during these hours. There appears to be no objection from the government. The law is clear that attorney's fees and court costs are deductible under 26 U.S.C. § 2053 from the gross estate where: (1) they have been incurred in the executor's action for refund of estate taxes paid to the government, and (2) the fees are found reasonable. *Cleveland v. Higgins*, 148 F.2d 722, 724 (2d Cir. 1945). The Court finds both conditions present in this matter.

The Court GRANTS the motion for SUMMARY JUDGMENT of the PLAINTIFF, Frances M. Deobald, as Executrix of the Estate of Harold J. Deobald, hereby allowing:

(1) a deduction from the gross estate of one-half of the value of the community property contributions to the Civil Service Retirement Fund, or $7,247.50;

(2) an exclusion from the gross estate of the value of 619 shares of Cleveland Trust Co. and 282 shares of Central National Bank of Cleveland, or $28,-876.50;

(3) a deduction from the gross estate of the value of attorney's fees and costs expended in administering the estate, or $2,107.20.

The parties have stipulated that the effect of the Court's decision allowing the aforesaid adjustments is to entitle the plaintiff to recover of the defendant the sum of $6,630.23 with interest thereon as provided by law and allowable costs of this action.

Accordingly, IT IS ORDERED that judgment be entered in favor of plaintiff, Frances M. Deobald, as Executrix of the Estate

of Harold John Deobald and against defendant United States of America in the amount of $6,630.23 as stipulated by the parties, with statutory interest granted pursuant to Section 6611(b)(2) of Title 26, United States Code, and costs of this action.