Sue Ann **HUNTER**, Marie Joyce Kotsonis, L. Fargo Richardson and L. Fargo Richardson Foundation, Plaintiffs,

v.

**UNITED STATES of America, Defendant.**

**No. 77–0665–CV–W–3.**

United States District Court, W. D. Missouri, W. D.

July 16, 1979.

Guy A. Magruder, Jr., and Richard M. Erickson, Terrell, Van Osdal & Magruder, Kansas City, Mo., for plaintiffs.

Ronald S. Reed, Jr., U.S. Atty. Kansas City, Mo., and James E. Crowe, Jr., Trial Atty., Tax Div., Dept. of Justice, Washington, D.C., for defendant.

## ORDER GRANTING SUMMARY JUDGMENT

RUSSELL G. CLARK, District Judge.

This action is before the Court upon stipulated facts and cross motions for summary judgment filed by plaintiffs and defendant. For the reasons stated herein, the plaintiffs' joint motion is granted and the defendant's motion is denied.

Plaintiffs, Sue Ann Hunter, Marie Joyce Kotsonis, L. Fargo Richardson, Jr., and L. F. Richardson Foundation, are the sole distributees and beneficiaries under the last will and testament of Lloyd F. Richardson, deceased. Plaintiffs brought this action for the recovery of federal estate taxes which they allege were erroneously and illegally assessed against, and collected from, the estate of Lloyd F. Richardson. The parties have submitted to the Court an extensive stipulation of facts, the pertinent provisions of which are noted herein, and which clearly indicate that there are no genuine issues of material fact. Accordingly, summary judgment is proper.

## FACTUAL BACKGROUND AS STIPULATED BY THE PARTIES

From 1943 through 1955, Lloyd F. Richardson (hereinafter, "Lloyd") purchased eleven life insurance policies on his own life. The beneficiaries of these policies were originally his wife, Hazle Richardson, as primary beneficiary, and their three children as secondary beneficiaries. If they predeceased Lloyd, his estate was named as the alternate beneficiary. From 1944 through 1961, Lloyd systematically transferred the ownership of these policies to his wife Hazle. These transfers were effected procedurally through assignments and through executed "control of policy" provisions. The defendant does not contest the validity of these transfers.

After the transfer of ownership had been accomplished, Hazle executed change of beneficiary forms with respect to all of the policies. Hazle named herself as primary beneficiary and her children and her estate as succeeding beneficiaries. Lloyd's estate was removed as an alternate beneficiary on the policies. At all times following the assignment of the policies to Hazle until her death in 1970, Hazle was the designated owner under the policies.

On March 22, 1961, Hazle properly executed her last will and testament and named Lloyd as executor of her estate and as trustee of a testamentary trust for the benefit of their children and grandchildren. Hazle died on August 29, 1970. Lloyd was appointed executor of her estate by letters testamentary granted by the Probate Court of Vernon County, Missouri, and said appointment continued in full force and effect until Lloyd's death on September 18, 1972. At the time of his death, Lloyd had not distributed the assets of the residuary estate to the testamentary trust nor had he assumed the duties of trustee pursuant to the will.

From 1923 until his death, Lloyd was involved in an automobile dealership in Nevada, Missouri. During most of those years the business was operated through a corporation named Richardson Motor Company. Lloyd was president and his son was vice-president and general manager. The only two shareholders in the corporation were Lloyd and Hazle. At her death, Hazle owned 1,311 shares of stock and Lloyd

owned 1,189 shares. Under the terms of her will, a specific bequest of 685 shares was made and the remainder of the shares were to pass to the residuary trusts created in Article IV of her will. Lloyd was to serve as trustee of these trusts which were for the benefit of their children and grandchildren. In addition to these shares, no other assets were included in the residuary estate other than the life insurance policies.

All administration expenses, estate taxes, inheritance taxes and court costs relative to Hazle's estate were paid by the executor from non-probate assets.

The parties have stipulated that there is no evidence in the Probate Court files or in the files or records of any of the issuing life insurance companies that Lloyd, in any capacity, exercised or attempted to exercise any incidents of ownership under any of the policies following the date of Hazle's death.

Upon Lloyd's death, the proceeds of the eleven policies amounting to $148,622.59 were paid to the named beneficiaries. The value of these insurance policies was not included in the gross estate on the federal estate tax return filed by Lloyd's estate. After an audit of the federal estate tax return filed by Lloyd's estate, the Internal Revenue Service assessed additional estate taxes against his estate in the amount of $152,751.46 plus interest. This additional amount resulted in part from the determination by the IRS that the value of the insurance policies was to be included in Lloyd's gross estate for federal estate tax purposes. This deficiency was paid by the estate and this civil action resulted seeking recovery of part of the additional taxes paid.[1]

Upon the stipulated facts, the Court finds that no genuine issue as to any material fact remains to be litigated and the Court makes the following conclusions of law.

## CONCLUSIONS OF LAW

The federal estate tax is a tax imposed upon the privilege of transferring property at one's death. In addition, the federal tax laws impose taxes upon other types of transfers which possess some of the aspects of a testamentary transfer which would otherwise be resorted to in order to escape taxes levied solely on testamentary transfers. *Estate of Connelly v. United States,* 551 F.2d 545, 551 (3rd Cir. 1977). A prime example of a transfer which possesses some of the aspects of a testamentary transfer is the traditional life insurance policy which contractually provides for the payment of the proceeds to some third person upon the death of the insured.

■ Within the federal tax scheme, 26 U.S.C. § 2042 provides that with respect to life insurance proceeds receivable by beneficiaries other than the insured or his estate, the proceeds are includable in the decedent's estate for federal estate tax purposes if at death the insured possessed any "incidents of ownership" in the insurance. Therefore, if the decedent-insured did not at his death possess any incidents of ownership over the policies on his life and the beneficiaries of the proceeds are recipients other than the decedent's estate, then under § 2042 the value of the proceeds would not be includable in the insured's estate for tax purposes. It is precisely this goal that Hazle and Lloyd Richardson attempted to achieve. Lloyd, as owner of the policies on his life, assigned complete ownership and control over the policies to his wife, Hazle. The beneficiaries of the proceeds were persons other than Lloyd or his estate. Thus, the sole issue presented by this action is whether the decedent Lloyd Richardson possessed any incidents of ownership over the subject life insurance policies at the time of his death while serving in a fiduciary capacity as executor and potential trustee of his wife's estate. It is the opinion of this Court that the decedent did not possess

---

1. The parties have stipulated that if this Court enters a decision in favor of the plaintiffs as to the excludability of the value of the policies in issue, a recomputation of estate taxes due the plaintiffs will be necessary. Regardless of the decision, a recomputation is required to allow for the deduction of reasonable attorney's fees and costs incurred by pursuing the administrative claim for refund and this litigation.

the requisite incidents of ownership concerning these policies to justify including their value in his estate under the provisions of § 2042.

The applicable portion of § 2042 provides that the value of the gross estate of the decedent shall include the value of all property:

(2) *Receivable by other beneficiaries.*—To the extent of the amount receivable by all other beneficiaries as insurance under policies on the life of the decedent with respect to which the decedent possessed at his death any of the incidents of ownership, exercisable either alone or in conjunction with any other person.

The term "incidents of ownership" is not defined in the statute, but its meaning is explained in the applicable regulation, 26 C.F.R. § 20.2042–1(c)(2) which states:

(2) For purposes of this paragraph, the term "incidents of ownership" is not limited in its meaning to ownership of the policy in the technical legal sense. Generally speaking, the term has reference to the right of the insured or his estate to the economic benefits of the policy. Thus, it includes the power to change the beneficiary, to surrender or cancel the policy, to assign the policy, to revoke an assignment, to pledge the policy for a loan, or to obtain from the insurer a loan against the surrender value of the policy, etc.

### A. Did the policies pass to the estate of Hazle?

Initially, plaintiffs argue that the addendums to the policies were ineffectual as an assignment of the policies to Hazle's estate as successor owner of the policies, that nowhere in the will was there any mention of the policies, and that the residuary clause did not operate to effect an assignment of the policies. Thus plaintiffs conclude that Lloyd did not acquire incidents of ownership in the policies as executor of her estate because the policies did not "pass" to the estate under the will. Plaintiffs argue that there is no authority in Missouri, or apparently elsewhere, that specifically holds that

a general residuary clause carries with it incidents of ownership of insurance policies on another's life which are owned by the testator, although this proposition was apparently assumed in *Estate of Walter Dawson*, 57 T.C. 837 (1972).

Whether or not the notations on the assignment forms were sufficient to effect an assignment to Hazle's estate need not be answered, for it is clear that under Missouri probate law, the contracts of insurance and their attendant cash surrender values passed to the probate estate of Hazle Richardson. Mo.Rev.Stat. § 473.260 expressly provides that:

When a person dies, his real and personal property, except exempt property, passes to the persons to whom it is devised by his last will . . . but it is subject to the possession of executor or administrator . . . and is chargeable with the expenses of administering the estate . . .

Furthermore, § 473.263 provides that:

Every executor or administrator has a right to and shall take possession of all the personal property of the decedent except exempt property of the surviving spouse and unmarried children, and administer it in accordance with this law.

Under these sections, it is apparent that the valued life insurance policies did become part of Hazle's estate because the policies were her personal property.

### B. Did Lloyd Richardson possess control at the time of his death while serving as executor and potential trustee?

Plaintiffs argue in the alternative that even if the policies passed under the will, that Lloyd as executor-trustee of the residuary estate assets did not possess control over these policies. At the time of his death, Lloyd was serving solely in the capacity of executor of his wife's estate and not as trustee of the testamentary trust established by his wife's will. Under Missouri law, it is well settled that:

the offices of executor and trustee do not merge, although they may be conferred upon and the powers of such offices be

exercised by the same person ·. . . But bequests of personalty go into the hands of the executor and do not become subject to any control by the trustee until there has been a legal separation of the funds. Until such separation the acts done in respect thereto are in the capacity of executor and not as trustee. *In re Jackson's Will*, 291 S.W.2d 214, 223 (Mo. App.1956).

Defendant argues that Lloyd possessed incidents of ownership both as executor and trustee of the residuary testamentary trust because as executor he controlled the distribution of the residuary assets to the trust. In addition, defendant argues that it is irrelevant for purposes of § 2042(2) that the probate assets had not been distributed to the trust at the time of Lloyd's death in September of 1972 or that he had not assumed the duties as trustee. Defendant cites *Estate of Fruehauf v. Commissioner of Internal Revenue*, 427 F.2d 80 (6th Cir. 1970), to support its argument.

In *Fruehauf,* the decedent was named co-executor of his wife's estate and co-trustee of a testamentary trust. The probate assets which included insurance policies on the life of the executor-trustee, had not been distributed to the trust at the time of the executor's death. The decedent-executor was also named as an income beneficiary of the trust. The Court stated:

> Decedent here had the power to become both trustee and life income beneficiary of the testamentary trust through the exercise of his powers as executor of the will. We believe that it is the existence of that power, not its exercise, which is determinative. Merely because decedent had not performed certain acts necessary to enable him to become trustee-beneficiary of the trust does not detract from his power to do so. Moreover, under the terms of [his wife's will] decedent had the power in his capacity as executor as well as trustee to surrender the policies for their cash value. 427 F.2d at 85.

The Court in *Fruehauf* did not consider it significant that the decedent therein had not been formally appointed trustee by the probate court prior to his death because of his ultimate ability to exercise control over the policies and benefit from the funded trust as an income beneficiary. Herein, the probate assets also had not been distributed to the trust. This Court concurs that the powers as trustee must also be examined and the inquiry should not be limited solely to the powers as executor merely because factually the distribution to the trust had not yet been accomplished. It is not a question of what Lloyd did or did not do, it is a question of what legally he was empowered to do both as executor and as potential trustee. Therefore, each fiduciary capacity shall be examined to determine whether Lloyd possessed in these fiduciary capacities the requisite incidents of ownership over the insurance policies.

### 1. Powers as Executor

Turning to the provisions of the will itself, the executor of Hazle's estate could:

> exercise, as executor or substitute or successor executor the same broad powers I confer on my husband in his capacity as trustee, in Section 5 of Article IV hereof, if or to the extent the conferring upon and exercising of such powers shall be *appropriate to executorship* and will be permitted by or will not be violative of applicable law; and each of them shall have the *power also to sell any of the assets of my estate,* in each instance at the property's value as shown in the inventory and appraisement of my estate filed in the Probate Court, and without the Probate Court's prior authorization or subsequent approval, or at such lesser price as the Probate Court may approve, and in either case *to any person or persons whomsoever, including my spouse (even though he as executor may be dealing with himself in his individual capacity)* and children, *in order to raise funds needed to pay death taxes and court costs and expenses of administration, or for any other proper purpose.* [Stipulated Exhibit Q, Article V, emphasis added]

Thus in addition to the traditional powers of management given to the trustee in Article IV of the will, the executor could exer-

cise the appropriate powers of an executor including the specific power to sell the probate assets to any person, including Lloyd in his individual capacity. It is this power to "self deal", the defendant argues, that gives the decedent executor the incidents of ownership over the policies.

Defendant does not argue that Lloyd possessed as executor the power to change the beneficiary designation of the policies. The defendant focuses upon the "wide powers" as executor under the terms of the will which gave to him the broad powers to "self deal" and thus to purchase, surrender, cancel, assign, revoke or pledge them for his benefit.

Although the ultimate question of "incidents of ownership" is one of federal tax law, the decision may turn on state law. *Landorf v. United States,* 408 F.2d 461, 466, 187 Ct.Cl. 99 (1969). Under Missouri probate law, Mo.Rev.Stat. § 473.477 (1955) specifically states:

> § 473.477 *Executor or administrator not to purchase, exception* No executor or administrator shall purchase any property belonging to the estate which is sold either at public or private sale, unless written consent thereto is filed by the distributees.

The parties have proceeded under the assumption that § 473.457(3) overrides the prohibition of self dealing because it states:

> (3) When power to sell, mortgage, lease or exchange property of the estate has been given to any executor under the terms of any will, the executor may proceed under such power, or under the provisions of this law, as he may determine.

However, the Court notes that § 473.457 only concerns the executor's power to *sell,* mortgage, lease, or exchange property and does not mention the executor's ability to

purchase from the estate. Although Missouri case law is sparse on this subject, dicta in a recent case reveals that in Missouri by statute an executor is prohibited from self dealing despite permissive language in a will. *Earney v. Clay,* 516 S.W.2d 59 (Mo.App.1974). In the *Estate of Fruehauf,* supra, 427 F.2d at 86, the Court found that pursuant to Michigan common law a fiduciary may be authorized by the terms of the instrument creating his powers to do that which in the absence of such provision would be a violation of his fiduciary duty of loyalty. Therefore, no restriction was found to prevent the fiduciary from self dealing. In Missouri, however, this common law doctrine has obviously been replaced by a statute expressly prohibiting an executor from self dealing subject to one and only one exception: upon the consent of all the distributees.[2]

Therefore, because Lloyd as executor was statutorily prevented from self dealing despite the permissive language of the will, it cannot be said that he possessed the legal power of control over these policies sufficient to include the value of the proceeds in his estate upon his death under § 2042. Defendant argues that:

> Even if Lloyd needed the consent of the other distributees to purchase the policies, this simply indicates that he held the necessary powers 'in conjunction with' other persons and Section 2042(2) would apply nonetheless.

This argument fails in that the phrase "exercisable either alone or in conjunction with any other person" refers to the joint possession of incidents of ownership. That phrase contemplates the situation of joint ownership of a policy where the incidents of ownership are shared and does not refer to a situation where a single individual requires the consent of others before he is *given* the

---

2. Mo.Rev.Stat. § 474.430 provides that the courts shall have due regard to the directions of the will, and the true intent and meaning of the testator. However, there is a countervailing doctrine that the intent of the testator is honored unless it runs counter to an inflexible rule of law or public policy. *Teller v. Kaufman,* 426 F.2d 128 (8th Cir. 1970); *Evans v. Volunteers of America,* 280 S.W.2d 1 (Mo.1951); *Shackle-*

*ford v. Fifer,* 269 S.W.2d 30 (Mo.1954); *Geyer v. Bookwalter,* 193 F.Supp. 57 (W.D.Mo.1961). Therefore, the testator may give permission for the executor to self deal and thus remove the taint or suspicion of a breach of fiduciary duty. Nevertheless, the executor, despite the language in the will, must still comply with the statutes and obtain the distributees' written consent.

incidents of ownership. See, *Commissioner of Int. Rev. v. Karagheusian's Estate,* 233 F.2d 197 (2nd Cir. 1956).

It is true that both in *Fruehauf,* supra, and in *Rose v. United States,* 511 F.2d 259 (5th Cir. 1975), the mere fiduciary restraints over the "exercise of the decedent's control do not automatically deprive it of the substantiality required for inclusion under § 2042(2)." *Rose v. United States,* 511 F.2d 259 (5th Cir. 1975). Herein, the restraint is more substantial as it is dictated by state statute and is not merely a common law fiduciary concept which can be modified by the will itself.

This statutory prohibition, which alone is sufficient to preclude includibility under § 2042, is additionally fortified by the restriction in the will itself which limited the power to self deal:

in order to raise funds needed to pay death taxes and court costs and expenses of administration, or for any proper purpose.

Plaintiffs state, and defendant concurs, that no additional funds were needed for administration purposes. Plaintiffs therefore maintain that if Lloyd exercised the power to self deal it would have been in contravention of the "for any proper purpose" restriction of the will itself.

Defendant in rebuttal, asserts that because only the stock of the closely held corporation and the insurance policies were in the residuary estate, that *if* additional expenses were incurred, it would be plausible for Lloyd to turn to the insurance policies as a source of cash for meeting any expenses, and that because he was authorized to self deal, he could have even purchased the policies at a bargain price as authorized by the will.[3]

This argument was rejected in a similar factual case of *In Estate of Anders Jordahl,* 65 T.C. 92 (1975), wherein the insured was one of two trustees of a trust which included policies on the insured's life as well as other securities. The Tax Court held that the insured had no "incidents of ownership" by reason of the trustee's powers to borrow against the policies or obtain premium loans since those powers were exercisable *only* if the trust income was insufficient to pay the premiums. Since the income had always been sufficient, the decedent did not "possess" the powers in question. This Court finds the rationale of the Tax Court to be applicable here.

Finally, assuming that the consent of the distributees would have been obtained and assuming that a "proper purpose" existed for the sale of these assets, the defendant argues that:

Even if it could be shown, however, that no substantial estate expenses were expected at the time of Lloyd's death, he still had the "power" to utilize any one of the policies in question to meet those expenses. Whether he was required to do that at the very moment of his death is irrelevant under Section 2042 of the Internal Revenue Code of 1954 (26 U.S. C.). The Supreme Court has held that taxability of insurance proceeds under Section 2042 depends upon—

a general, legal power to exercise ownership, without regard to the owner's ability to exercise it at a particular moment. *Commissioner v. Noel Estate,* 380 U.S. 678, 684 [85 S.Ct. 1238, 14 L.Ed.2d 159] (1955).

Lloyd clearly held such powers at his death. [Defendant's Opposition to Plaintiff's Motion for Summary Judgment, pp. 8–9]

Additionally, defendant cites to *United States v. Rhode Island Hospital Trust Co.,* 355 F.2d 7, 10 (1st Cir. 1966) for the proposition that the phrase "incidents of ownership" connotes something partial, minor, or even fractional in scope and speaks more of a possibility than of probability. Thus, defendant asserts that although not probable, Lloyd possessed the ability to possibly obtain control over the insurance policies, and that it is this possibility without regard to

---

**3.** The will provided that he could sell the assets at their appraised value as listed on the probate inventory which is filed shortly after the estate is opened. Presumably the policies would have increased in their cash values after the initial inventory.

his ability to exercise it at a particular moment that dictates includibility in his estate.

The cited cases both involved unexercised abilities to exert possessed powers or legal rights. Herein, decedent possessed the legal right to self deal only upon the express conditions found in the will and permitted under Missouri law. To possess an unexercised power as in the cited cases is distinguishable from the possibility of obtaining a power as executor which may or may not be exercised.

Therefore, because of the statutory bar and the restriction of the will itself, Lloyd did not possess the unfettered legal power to exert control over these policies in his capacity as executor. For the purposes of § 2042, he possessed no incidents of ownership over these policies in his position of executor.

### 2. Powers as Trustee

Although Lloyd died before assuming the position of trustee of the testamentary trust, as executor he controlled the time and manner of distribution of the residuary estate assets to the trust. Therefore, although this Court has determined that as executor he did not possess the requisite incidents of ownership, his powers as potential trustee must also be examined.

Again, we begin with the proposition that mere possession by a decedent of any powers in the nature of incidents of ownership in a fiduciary capacity does not invariably require the inclusion of the proceeds of the policies on the decedent's life in his gross estate. *Estate of Fruehauf v. Commissioner of Internal Revenue,* 427 F.2d 80, 85 (6th Cir. 1970). The powers themselves must be examined to determine if the fiduciary can derive an economic benefit from them. *Estate of Connelly v. United States,* 551 F.2d 545 (3rd Cir. 1977); *Estate of Fruehauf v. Commissioner,* supra; *Estate of Skifter v. Commissioner,* 468 F.2d 699 (2nd Cir. 1972).

This Court concurs with the analysis and discussion of the economic benefits test as found in *Estate of Connelly v. United States,* 551 F.2d 545, 547, note 7, (3rd Cir. 1977), that Treasury Regulation § 2042–

1(c)(2) specifically provides that "incidents of ownership" refers "to the right of the insured or his estate to the economic benefits of the policy." Clearly, Lloyd as trustee possessed no such rights.

Hazle's will established several individual trusts for the benefit of her children. The trusts were to receive the residuary assets of her estate. Until Lloyd's death, the insurance policies on his life would have been included in these trusts. At his death, prior to distribution to the trusts, the proceeds of the policies were paid to the beneficiaries with the Probate Court's approval.

Even if Lloyd had effected a distribution to the trusts of the residuary estate, and had assumed the powers of trustee, he would not have possessed any incidents of ownership under § 2042. The powers of the trustee were outlined in the will itself, which provided inter alia, in Section 5 of Article IV that the trustee shall be empowered:

(a) to retain in original form or change, and to make, investments of funds or property of the trust, irrespective of any statute, court decision, rule or custom limiting or regulating the investment of trust funds; and to invest in common trust funds and in mutual funds and investment trusts;

(b) to sell, to lease for any term however long and without regard to duration of the trust, any of the trust property, in such manner and on such terms and conditions and for such consideration as the trustee shall deem advantageous;

(c) to expend funds for any purpose by the trustee deemed advisable in connection with or conducive to the proper and efficient administration of the trust estate or performance of any other duties or acts as trustee.

Again, the defendant argues that these broad powers enabled Lloyd to potentially "self deal" and that the very broad powers as trustee conferred upon him the legal right to control the insurance policies sufficient to bring them within the provisions of § 2042 even though Lloyd could not directly obtain any economic benefit.

It is imperative to note that there is no specific authorization in the will for the trustee to self deal in comparison with the specific language concerning the executor's powers.

Lloyd's powers as trustee would not mandate inclusion of the proceeds of the policies in his estate under § 2042 because of the stringent fiduciary restraints upon a trustee and because as trustee he had no right to the economic benefits of the policies.

A trustee is a fiduciary of the highest order who is required meticulously to observe the fiduciary relationship and to perform the obligations of a trustee to the cestui que trust, and he is held to a high standard of conduct with respect to administration of the trust. *Bakewell v. Mercantile Trust Company,* 319 S.W.2d 600 (Mo. 1959). A trustee must administer the trust solely in the interest of the beneficiaries. Broad powers of management under the terms of a testamentary trust do not mean that the trustee is beyond power of control and accountability. *Vest v. Bialson,* 293 S.W.2d 369 (Mo.1956). Thus any exercise of the broad powers of trusteeship would be restrained by this high fiduciary duty.

Defendant maintains that as trustee Lloyd's powers would include traditional powers of management over the policies such as the right to distribute current and accumulated dividends or adding the dividends to the corpus, and even rearranging the policies and the beneficiaries (maintaining the same amounts of the ultimate proceeds per recipient) so long as the provisions of the trust instrument were achieved, and controlling the manner of distribution of the corpus and income to the named beneficiaries. All of these powers, however, would be exercised solely in his fiduciary capacity for the economic benefit of others. Lloyd was not an income beneficiary of the trust.

The facts in this case fall squarely within the situation presented in *Estate of Skifter v. Commissioner of Internal Revenue,* 468 F.2d 699 (2nd Cir. 1972). Therein, Skifter had assigned all of his interest in nine insurance policies on his life to his wife effec-tively making her the owner of the policies. Skifter retained no interest in the policies and retained no power over them. His wife predeceased Skifter and in her will directed that her residuary estate which included the nine policies be placed in trust for their daughter. Skifter was appointed trustee with the traditional broad powers attendant with that fiduciary position. Skifter died in 1964 while serving as trustee. Contending that under the terms of the trust Skifter possessed at his death "incidents of ownership" under § 2042, the Commissioner assessed a deficiency against the estate. The Tax Court found in favor of the estate and the Commissioner appealed. The United States Court of Appeals for the Second Circuit affirmed in a well reasoned opinion that held Skifter possessed broad legal powers but that he could not exercise them for his own economic benefit and therefore, the proceeds were not includable in his estate.

The government argues here, as in *Skifter,* that Treasury Regulation § 20.2042–1(c)(4) controls:

A decedent is considered to have an "incident of ownership" in an insurance policy on his life held in trust if, under the terms of the policy, the decedent (either alone or in conjunction with another person or persons) has the power (as trustee or otherwise) to change the beneficial ownership in the policy or its proceeds, or the time or manner of enjoyment thereof, even though the decedent has no beneficial interest in the trust.

The Court in *Skifter,* however, rejected the applicability of this regulation which was promulgated under the controlling provisions of the statute. It found that § 2042 cannot be read in isolation but must be read in light of its companion sections: § 2036 (transfers with retained life estate), § 2037 (transfers taking effect at death), § 2038 (revocable transfers), and § 2041 (powers of appointment).

The defendant herein recognizes that *Skifter* is adverse to its position but urges this Court to adopt the rationale of the

decisions of the Fifth Circuit.[4] See, *Rose v. United States,* 511 F.2d 259 (5th Cir. 1975); *Terriberry v. United States,* 517 F.2d 286 (5th Cir. 1975).

After careful consideration of the conflicting standards and interpretations, this Court is persuaded by the rationale expressed in *Skifter,* supra, 468 F.2d at 704:

. . . we conclude that, although such a power might well constitute an incident of ownership if retained by the assignor of the policies, it is not an incident of ownership within the intended scope of § 2042 when it has been conveyed to the decedent long after he had divested himself of all interest in the policies and when he cannot exercise the power for his own benefit. We justify this interpretation of "incidents of ownership" on the apparent intent of Congress that § 2042 was not to operate in such a manner as to discriminate against life insurance, with regard to estate tax treatment, as compared with other types of property. We also note that our conclusion comports with the views expressed by the Sixth Circuit in *Estate of Fruehauf v. Commissioner of Internal Revenue,* 427 F.2d 80, 84–85 (6th Cir. 1970). Therefore, we must reject the contention of the Commissioner that the language of § 2042 requires that it be given a broader scope of operation than the statutes covering other types of property.

Where, as here, the decedent is the transferee of broad powers held in a fiduciary capacity as trustee, with no beneficial interest therein, it is indeed difficult to "construe this arrangement as a substitute for a testamentary disposition by the decedent." 468 F.2d at 704. Having previously divested himself of all incidents of ownership in the policies, without retaining any control over the policies themselves, and later having those same policies transferred to his custody as trustee for the economic benefit of others, the includibility provisions of § 2042 are not applicable. This determination is fortified by the additional factor that unlike the cited authorities presented by the defendant, this trust is not what is commonly referred to as an "insurance trust". Without question, Hazle did not foresee that the insurance policies could become part of the trust corpus for the instrument's terms are repeatedly framed in reference solely to the stock in the closely held corporation.

3. Are plaintiffs entitled to attorney's fees under 42 U.S.C. § 1988?

■ In 1976, 42 U.S.C. § 1988 was amended to provide for the allowance of attorney fees in civil rights cases. A further amendment was adopted to allow such fees to the prevailing party in "any civil action or proceeding, by or on behalf of the United States of America, to enforce, or charging a violation of, a provision of the United States Internal Revenue Code . . ." Plaintiffs argue that a tax refund suit is actually a continuation of a "proceeding" initiated originally by or on behalf of the government.

In *Patzkowski v. United States,* 576 F.2d 134, 139 (8th Cir. 1978) it was held that in proceedings where a prevailing *taxpayer-defendant* requests attorney's fees under § 1988, an award may be allowed when there is a showing that the government's action was "frivolous, harassing, vexatious, unreasonable, without foundation, or was instituted in bad faith." The question of whether a prevailing *taxpayer-plaintiff* could be awarded attorney's fees under § 1988 was not addressed. However, that precise issue was answered in the negative in *Aparacor, Inc. v. United States,* 571 F.2d

---

4. After this case had been submitted to the Court, the defendant supplied the Court with two recent cases to fortify its position: *Estate of Dimen v. Commissioner,* 72 T.C. 198, No. 17 (April 24, 1979) and *Edwin E. Gesner, et al. v. United States,* 600 F.Supp. 1349, Court of Claims, No. 534–77, (June 13, 1979). In *Dimen,* the decedent was the sole shareholder of a corporation which held life insurance policies upon his life and the corporation was a partial beneficiary. In *Gesner,* decedent insured was an income beneficiary of a trust established by his wife and also served as trustee. *Dimen* is not on point, whereas *Gesner* is again distinguishable because the decedent was capable of direct economic benefit under the trust.

552 (Ct.1978) which held that the Act does not authorize the award of attorney's fees in tax refund actions wherein the United States is a defendant and in which the taxpayer is the initiator. That decision was reached in spite of the post-enactment comments of the Senator who introduced the amendment.

This Court concurs with the analysis of § 1988 found in *Aparacor, Inc.,* supra. However, even if § 1988 were construed to allow the award to successful taxpayer-plaintiffs, in this action the required vexatious and harassing nature of the government's actions in assessing the deficiency is not present.

Accordingly, for the above stated reasons, it is hereby

ORDERED that plaintiffs' motion for summary judgment is granted and defendant's cross motion for summary judgment is denied; and it is further

ORDERED that plaintiffs' prayer for attorney's fees under 42 U.S.C. § 1988 is denied; and it is further

ORDERED that within thirty days of the date of this order, the parties shall submit a stipulated computation of the amount of the refund together with interest as provided by law and that upon filing of said stipulation, judgment will be entered accordingly.